De'Veron J. RATLIFF, aka Deveron Jacques Ratliff, aka Christopher Hooper, aka Deveron Rattliff, Petitioner,

v.

Tony HEDGEPETH, Warden, Respondent.

Case No. ED CV 07–627–RSWL(RC).

United States District Court, C.D. California.

May 4, 2010.

[redacted]

Deveron J. Ratliff, San Luis Obispo, CA, pro se.

Kevin R. Vienna, CAAG Office of Attorney General of California, San Diego, CA, for Respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE AND DENYING CERTIFICATE OF APPEALABILITY

RONALD S.W. LEW, Senior District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Petition and other papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, as well as petitioner's objections, and has made a *de novo* determination.

IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) the Report and Recommendation is adopted as the findings of fact and conclusions of law herein; and (3) Judgment shall be entered denying the petition and dismissing the action with prejudice.

This Court finds an appeal would not be taken in good faith, and petitioner has not made a substantial showing that he has been denied a constitutional right, for the reasons set forth in the Report and Recommendation; thus, a certificate of appealability should not issue under 28 U.S.C. § 2253(c)(2) and Fed. R.App. P. 22(b). *Slack v. McDaniel,* 529 U.S. 473, 483, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000); *Mayfield v. Calderon,* 229 F.3d 895, 900 (9th Cir.2000).

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United States mail on petitioner.

## JUDGMENT

Pursuant to the Order of the Court adopting the findings, conclusions, and recommendations of United States Magistrate Judge Rosalyn M. Chapman,

IT IS ADJUDGED that the petition for writ of habeas corpus is denied and the action is dismissed with prejudice.

## REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

ROSALYN M. CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Ronald S.W. Lew, Senior United States District Judge, by Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05–07 of the United States District Court for the Central District of California.

### BACKGROUND

#### I

On February 1, 2002, in Riverside County Superior Court case no. RIF091977, a jury convicted petitioner De'Veron J. Ratliff, aka Deveron Jacques Ratliff, aka Christopher Hooper, aka Deveron Rattliff, of one count of assault with a deadly weapon other than a firearm (knife) in violation of California Penal Code ("P.C.") § 245(a)(1) (count 2) and one count of being a felon in possession of a firearm in violation of P.C. § 12021(a)(1) (count 4); as to both counts, the jury found petitioner

committed the offenses for the benefit of, at the direction of, and in association with a criminal street gang with specific intent to promote, further and assist in criminal conduct by gang members within the meaning of P.C. § 186.22(b)(1); and, as to count 2, the jury found petitioner personally used a firearm within the meaning of P.C. §§ 12022.5(a) and 1192.7(c)(8); however, the jury found petitioner not guilty of attempted willful and premeditated murder in violation of P.C. §§ 664/87 (count 1). Clerk's Transcript ("CT") 107–11, 154–55, 159–64.[1] In a bifurcated proceeding, the trial court found petitioner had suffered two prior strikes under California's Three Strikes law, within the meaning of P.C. §§ 667(c) and (e) and 1170.12(c). CT 301–02. The petitioner was sentenced under the Three Strikes law to the total term of 49 years to life in state prison. CT 380–81, 383.

The petitioner appealed his convictions and sentence to the California Court of Appeal, CT 384–86, which in an unpublished opinion filed August 24, 2004, "mod-

if[ied] the judgment ... by striking the two [P.C.] section 667.5, subdivision (b) enhancements imposed on count 2 and by amending the [P.C.] section 186.22 enhancement from a 10–year prison term under subdivision (b)(1) to a minimum 15–year parole term under subdivision (b)(5) [,]" and affirmed the judgment as modified. Lodgment nos. 1–4. On October 6, 2004, petitioner, proceeding through counsel, filed a petition for review in the California Supreme Court,[2] which denied review on November 10, 2004. Lodgment nos. 5–6.

■■■ On June 27, 2005,[3] petitioner, proceeding pro se, filed a habeas corpus petition in the Riverside County Superior Court, which denied the petition on July 6, 2005. Lodgment nos. 7–8. On July 27, 2005, petitioner filed a habeas corpus petition in the California Court of Appeal, which denied the petition on August 12, 2005. Lodgment nos. 9–10. Finally, on August 17, 2005, petitioner filed a habeas corpus petition in the California Supreme Court, which denied the petition on June 28, 2006.[4] Lodgment nos. 11–12.

---

1. Petitioner was tried with co-defendant Star Monique Vanpool. CT 107–11.

2. In his petition for review, petitioner raised the sole claim that he was denied his constitutional right to a fair trial "due to the admission of the testimony of a witness [Eric Thomas] who reached a conditional plea agreement with the prosecution that provided that truthful testimony meant testimony that was consistent with a prior statement, and that gave the prosecutor ... the discretion to determine whether the witness testified truthfully[.]" Lodgment no. 5.

3. "Under the 'prison mailbox rule' ... a prisoner's ... habeas petition is deemed filed when he hands it over to prison authorities for mailing in the district court." *Huizar v. Carey*, 273 F.3d 1220, 1222 (9th Cir.2001) (citation omitted); *Houston v. Lack*, 487 U.S. 266, 276, 108 S.Ct. 2379, 2385, 101 L.Ed.2d 245 (1988). The "[mailbox] rule applies to prisoners filing habeas petitions in both federal and state courts." *Huizar*, 273 F.3d at

1223; *Anthony v. Cambra*, 236 F.3d 568, 574–75 (9th Cir.2000), *cert. denied*, 533 U.S. 941, 121 S.Ct. 2576, 150 L.Ed.2d 739 (2001).

4. In his habeas corpus petition to the California Supreme Court, petitioner raises the following claims: (1) ineffective assistance of appellate counsel in violation of the Sixth and Fourteen Amendments for failing to: (a) raise "a claim of ineffective assistance of trial counsel for failure to hold the prosecution to it's [sic] burden on reasonable doubt based on conflicting testimony," (b) "file a claim of insufficient evidence," (c) "raise the claim that the court misled the jurors with instruc[tions]," (d) claim "that violation of the rules of court standards on expert witnesses [sic] qualifications to testify," and (e) claim "prosecutorial misconduct [in that] the prosecution withheld exculpatory evidence that could have changed the outcome of trial"; (2) "the prosecution [suppressed] ... evidence favorable to [petitioner] [in] viola[tion] [of] due process of law"; (3) "insufficient evidence to justify a guilty verdict"; and (4)

On April 3, 2006, while his habeas corpus petition was pending in the California Supreme Court, petitioner filed a second habeas corpus petition in the Riverside County Superior Court, which denied the petition on May 1, 2006. Lodgment nos. 13–14. On May 17, 2006, petitioner filed a second habeas corpus petition in the California Court of Appeal, which denied the petition on May 26, 2006. Lodgment nos. 15–16. On July 14, 2006, petitioner filed a second habeas corpus petition in the California Supreme Court,[5] which denied the petition on February 7, 2007, with citations to: *In re Clark*, 5 Cal.4th 750, 21 Cal. Rptr.2d 509, 855 P.2d 729 (1993); *In re Dixon*, 41 Cal.2d 756, 264 P.2d 513 (1953); *In re Swain*, 34 Cal.2d 300, 304, 209 P.2d 793 (1949); *People v. Duvall*, 9 Cal.4th 464, 474, 37 Cal.Rptr.2d 259, 886 P.2d 1252 (1995); and *In re Lindley*, 29 Cal.2d 709, 177 P.2d 918 (1947). Lodgment nos. 17–18.

## II

The California Court of Appeal, in affirming petitioner's convictions, made the following findings of facts underlying the offenses:[6] The charges in this case stem from three fights that occurred on May 25, 2000. The first fight occurred at Mel's Liquor store where petitioner pushed Vincent Thomas's friend in the head after the two had exchanged words about the Raymond Street Crips, a gang in which petitioner was a member. Vincent Thomas then hit petitioner in the back of the head and a fight between petitioner's friends and Thomas's friends broke out in the liquor store parking lot. Co-defendant Vanpool and her friends were also at the liquor store and she participated in the

"ineffective assistance of trial counsel for[: (a)] violation of due process on the burden of proof standard[] on all charges to the elements of proof beyond [a] reasonable doubt," (b) not filing "a motion for severance on the grounds of conflict of interest" regarding co-defendant, (c) not "hold[ing] the state['s] case to the burden of proof standard on the [charges] by failing to file for a dismissal for insufficient evidence ... after the State rested[,]" (d) "fail[ing] to effectively cross-examine the state['s] witness LaJoyce Mack," (e) "fail[ing] to object to the use of evidence of other crimes that [petitioner] had no involvement with to support [petitioner's] gang involvement charge," (f) "fail[ing] to subpoena other eyewitnesses," and (g) "fail[ing] to object to instructions that violate[] [petitioner's] right to have every element proved beyond a reasonable [doubt]." Lodgment no. 11.

5. The petitioner raised the following claims in this second petition: (1) "The Court caused a miscarriage of justice when it misled the jury in instructions doing [sic] deliberations"; (2) "[i]neffectiveness of trial counsel" in that trial counsel failed to: (a) "present critical evidence ... favorable to petitioner," (b) "object to prosecution witness LaJoyce Mack['s] testimony or file for a mistrial" after "Mack completely changed her testimony after being coerced by prosecutor outside the presence of the court," (c) "have still photos from the surveillance video of Mel's Liquor blown up to bring to jury's attention that petitioner had a low cut hairstyle/bald head on the date allege[d] crime to[ok] place," (d) "present the letters [from Eric Thomas] to the court in order to impeach prosecution witness Eric Thomas," (e) "to present any evidence, character witnesses, expert witness or eyewitnesses ... in order to give petitioner an adequate defense," (f) "present into evidence an L.A. Times newspaper article" showing petitioner "speaking out against gangs," and (g) "to introduce known critical evidence"; (3) "petitioner's conviction was obtained as a result of the prosecutor's misstatements of fact" in the presentation of LaJoyce Mack's recanting testimony; (4) "the evidence is not sufficient to establish any of the offenses were committed by [petitioner] for purposes of furthering a criminal street gang or that petitioner was even apart [sic] of a gang"; (5) "the trial court erred in admitting testimony of threats received by virtually all of the prosecution's witnesses" to petitioner's prejudice; and (6) "the prosecutor committed prejudicial misconduct in closing arguments[.]" Lodgment no. 17.

6. Lodgment no. 4 at 3–4.

parking lot fight. That fight ended and the two groups went their separate ways. Vincent Thomas and his friends went to Thomas's house and petitioner and Vanpool went to a house on Victor Street.

The second fight took place at the house on Victor Street when Vincent Thomas and his friends arrived and confronted petitioner. A brawl broke out when Vincent Thomas's brother and one of his friends punched petitioner and one of his companions. That fight ended when the woman who owned the Victor Street house threatened to call the police.

The third and final fight occurred in a park where the two groups met again. There, Vincent Thomas saw petitioner holding what appeared to be a gun. When Vincent ran, he was chased and knocked to the ground where he was beaten and stabbed by several people, one of whom Vincent identified as petitioner. Another witness saw Vanpool stab Vincent several times. After stabbing Vincent, Vanpool drove off in the truck that Vincent's brother, along with Vincent and two others, had driven to the park. The truck belonged to Vincent Thomas's father. Vincent Thomas had five stab wounds—one on the upper left bicep, two on the buttocks, one of which was deep and considered serious, and three on his legs and thighs. The wounds required sutures.

According to various witnesses, petitioner was a member of the Raymond Street Crips and while at the Victor Street house had been heard to say, "All you niggas out here in Moreno Valley claimin' Raymond who never been in the hood are gonna get put on the hood or get smoked." A witness also heard petitioner refer to Vincent Thomas and his friends as "busters," a derogatory term that refers to a person who falsely claims to be in a gang. During the fight in the park, petitioner also was heard to say to Vincent, while the latter was on the ground being beaten and

stabbed, not to "claim" petitioner's hood anymore. Witnesses also testified that while Vanpool was stabbing Vincent Thomas, she was heard to say, "Raymond Crip, whew, whew" and "Don't ever claim Raymond again."

### III

Effective April 17, 2007, petitioner, proceeding pro se, filed the pending habeas corpus petition under 28 U.S.C. § 2254, and on July 30, 2007, respondent filed a motion to dismiss the petition, arguing it is both untimely and a "mixed" petition. On November 13, 2007, the Court denied respondent's motion to dismiss, and on March 4, 2008, respondent filed his answer. The petitioner filed his reply on June 11, 2008.

The petition raises the following numerous grounds for habeas corpus relief:

Ground One—Petitioner "was denied his right[ ] to a fair trial due to the court[']s error in denying petitioner's motion to strike the testimony of . . . Eric Thomas as to the plea[ ] bargain he entered into with the prosecutor[,] which left the prosecutor as sole mediater [sic] in determining whether [Eric's] testimony was truthful . . . an[d] unduly pressured . . . [Eric] to provide testimony which the prosecutor desired";

Ground Two—"The prosecutor committed prejudicial misconduct by expressing his personal opinion as to who he believed . . . during closing arguments";

Ground Three—"The trial court erred [in violation of the Sixth Amendment] in admitting testimony of threats received by virtually all of the prosecution's witnesses";

Ground Four—(a) "The evidence is not sufficient to establish any of the offenses were committed by petitioner for purposes of furthering a criminal street gang within the meaning of Penal Code § 186.22 nor that petitioner was even apart [sic] of [an]

allege[d] gang[;]" and (b) "the trial court erred by admitting extensive evidence of [petitioner's] allege[d] membership in a gang[,]" violating petitioner's due process right to a fair trial;

Ground Five—"Petitioner's conviction was obtained as a result of the prosecution's misstatement of fact" when the prosecutor misled prosecution witness LaJoyce Mack into believing petitioner had a gun, whereas it was Eric Thomas;

Ground Six—Defense counsel was ineffective in that he: (a) failed "to properly investigate and put on an adequate defense [on] petitioner's behalf," (b) "failed to file a motion for severance on the grounds of conflict of interest," (c) failed "to subpoena any of the eye witnesses, or character witnesses who favored petitioner," (d) failed to interview and subpoena a gang expert, (e) "failed to present critical exculpatory evidence that was favorable to petitioner," specifically (i) "letters and notes that ... Eric Thomas wrote petitioner stating he [Eric Thomas] knew petitioner was [not] guilty of [the] offense, but he needed to do what he had to do in order to get out of jail," (ii) "L.A. Times news paper [sic] clipping of petitioner involved in Straight Talk Program speaking out against gangs to jr high and high school kids," and (iii) "[a] surveillance video tape [sic] of footage depicting petitioner with a very low hair cut without a beard, whereas the prosecution witnesses described the individual with [the] allege[d] gun as having either corn rolls, puff ball or an afro in his hair with a beard," (f) failed "to object to prosecution witness LaJoyce Mack['s] testimony or file for a mistrial," (g) failed "to object to prosecutor Ryan Markson parading ... Eric Thomas into the courtroom" while "witness LaJoyce Mack was being questioned under re-direct in order to further intimidate witness LaJoyce Mack into changing her testimony," (h) failed "to object to incompetent prejudicial

hearsay testimony from witness Eric Thomas where he placed petitioner as being apart [sic] of a killing squad called the 5Rs," (i) failed "to properly cross examine prosecution witness Eric Thomas as to his incompetent hearsay gang testimony," (j) failed "to subpeona [sic] critical witness Rashima Ward a.k.a. Tamara Hunt to have her at hearing for a new trial on newly discovered evidence," and (k) "misled petitioner and [left] petitioner confused as to the purpose of a[ ] bifurcation hearing ... which ultimately led to petitioner admitting to priors instead of having a trial on the priors";

Ground Seven—Appellate counsel was ineffective for: (a) "fail[ing] to raise numerous claims of ... ineffective assistance of trial counsel[,]" (b) failing to claim insufficiency of evidence, (c) failing to "claim that the court misled the jurors with instructions," (d) failing to claim "a violation of the Rules of Court standard on expert witnesses['] qualification to testify," and (e) failing to claim that "the prosecutor withheld exculpatory evidence";

Ground Eight—"The court caused a miscarriage of justice when it misled the jury in instructions doing [sic] deliberations";

Ground Nine—The "[p]rosecutor blantantly [sic] failed to disclose favorable substantial material to petitioner"; and

Ground Ten—"Insufficient ... evidence to justify a guilty verdict beyond a reasonable doubt[.]"

## DISCUSSION

### IV

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "established a one-year period of limitations for federal habeas petitions filed by state prisoners," *Bryant v. Arizona Attorney Gen.*, 499 F.3d 1056, 1059 (9th Cir.2007), as follows:

(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

\* \* \*

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The California Supreme Court denied petitioner's request for review on November 10, 2004. After the California Supreme Court denied review, petitioner had the option of seeking a writ of certiorari from the United States Supreme Court. 28 U.S.C. § 1257. A writ of certiorari must be sought within ninety days after the California Supreme Court denies review. 28 U.S.C. § 2101(d); Rules of the Supreme Court of the United States, Rule 13. If the petitioner does not seek certiorari in the Supreme Court, the direct review process is over at the end of the ninety-day period. *Whalem/Hunt v. Early,* 233 F.3d 1146, 1147 (9th Cir.2000) (en banc); *Bowen v. Roe,* 188 F.3d 1157, 1159 (9th Cir.1999). Thus, for petitioner, AEDPA's statute of limitations began to run on February 9, 2005, and expired on February 8, 2006, one year from when his state court decision became final. *Ibid.* Here, the instant action was not filed until April 17, 2007—more than one year after the statute of limitations expired.

■ However, this Court must consider whether the statute of limitations was tolled while petitioner's applications for collateral relief were pending before the California courts. Generally, "the statute of limitations is tolled from the time the first state habeas petition is filed until the California Supreme Court rejects the petitioner's final collateral challenge[,]" *Nino v. Galaza,* 183 F.3d 1003, 1006 (9th Cir. 1999) (footnotes omitted), *cert. denied,* 529 U.S. 1104, 120 S.Ct. 1846, 146 L.Ed.2d 787 (2000), so long as the petitioner did not unreasonably delay in seeking collateral relief. *Carey v. Saffold,* 536 U.S. 214, 225, 122 S.Ct. 2134, 2141, 153 L.Ed.2d 260 (2002). Here, petitioner filed a habeas corpus petition in the Los Angeles County Superior Court on June 27, 2005. At that time, petitioner had "used" 138 days of his allotted 365 days, and had 227 days left on the limitations period. *Nino,* 183 F.3d at 1006. The statute of limitations was tolled from June 27, 2005, until June 28, 2006,[7] when the California Supreme Court denied petitioner's habeas corpus petition. *Id.*

■ The pending petition would not be timely except for the statutory tolling of the limitations period while petitioner's second habeas corpus petition was pending before the California Supreme Court.[8] However, respondent contends the second

---

7. Former Rule 29.4 of the California Rules of Court provided that the "the denial of a petition for a writ within the court's original jurisdiction without issuance of an alternative writ or order to show cause" is "final on filing." Cal.Rules of Court, Rule 29.4(b)(2)(C) (2006). Former Rule 29.4 was renumbered Rule 8.532 and amended effective January 1, 2007.

8. Since petitioner's second habeas corpus petitions to the Superior Court and Court of Appeal were filed and denied while petitioner's first habeas corpus petition to the California Supreme Court was pending, these petitions did not statutorily toll the limitations period. *Delhomme v. Ramirez,* 340 F.3d 817, 820 (9th Cir.2003) (per curiam). "Rather, each time a petitioner files a new habeas

habeas petition to the California Supreme Court did not statutorily toll the limitations period because it was not "properly filed" within the meaning of Section 2244(d)(2), due to the California Supreme Court's citation to *In re Clark* when it denied the petition. The respondent contends the citation to *In re Clark* means the California Supreme Court found the petition to be untimely. *See,* e.g., *In re Clark,* 5 Cal.4th 750, 775, 21 Cal.Rptr.2d 509, 525, 855 P.2d 729 (1993) ("A petitioner will be expected to demonstrate due diligence in pursuing potential claims. If a petitioner had reason to suspect that a basis for habeas relief was available, but did nothing to promptly confirm those suspicions, that failure must be justified."). There is no merit to this contention.

Although a citation to *Clark* may mean the petition is untimely, that is not the only proposition for which *Clark* stands. Rather, *Clark* also stands for the proposition that "absent a change in the applicable law or the facts, the court will not consider repeated applications for habeas corpus presenting claims previously rejected ... [as well as] newly presented grounds for relief which were known to the petitioner at the time of a prior collateral attack on the judgment." *Id.* at 767–68, 21 Cal.Rptr.2d at 520, 855 P.2d 729. Moreover, *Clark* also stands for "the general rule that issues resolved on appeal will not

be reconsidered on habeas corpus[,]" *id.* at 765, 21 Cal.Rptr.2d at 518, 855 P.2d 729 (citing *In re Waltreus,* 62 Cal.2d 218, 225, 42 Cal.Rptr. 9, 397 P.2d 1001 (1965), *cert. denied,* 382 U.S. 853, 86 S.Ct. 103, 15 L.Ed.2d 92 (1965)), and its companion rule that "in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction." *Clark,* 5 Cal.4th at 765, 21 Cal.Rptr.2d at 518, 855 P.2d 729 (citing *In re Dixon,* 41 Cal.2d 756, 759, 264 P.2d 513 (1953); internal quotation marks omitted).

■ Under AEDPA, respondent "bears the burden of proving that the AEDPA limitations period has expired." *Fleming v. Evans,* 481 F.3d 1249, 1257 (10th Cir. 2007); *see also Gildon v. Bowen,* 384 F.3d 883, 886 (7th Cir.2004) ("Since the period of limitations is an affirmative defense, the state has the burden of showing that the petition is untimely."), *cert. denied,* 543 U.S. 1168, 125 S.Ct. 1348, 161 L.Ed.2d 144 (2005); *Griffin v. Rogers,* 308 F.3d 647, 653 (6th Cir.2002) ("[T]he party asserting statute of limitations as an affirmative defense has the burden of demonstrating that the statute has run."). Given the variety of procedural rules set forth in *Clark,*[9] and since the California Supreme

---

petition at the same or a lower level, as [petitioner] did here, the subsequent petition has no effect on the already pending application, but triggers an entirely separate round of review." *Id.* This raises the question of whether petitioner is entitled to "gap tolling" for the period between the denial of his first habeas corpus petition by the California Supreme Court and the filing of his second habeas corpus petition in the California Supreme Court since, at that time, he had commenced a second round of review by filing his habeas corpus petition in the Superior Court. The Court need not resolve the issue here, however, since even if petitioner is not entitled to this "gap tolling" his petition is never-

theless timely. Therefore, for purposes of this opinion only, the Court assumes *arguendo* "gap tolling" does not apply in these circumstances.

9. For instance, if the California Supreme Court's citation to *Clark* means the habeas corpus petition is a successive petition or piecemeal litigation, *Clark,* 5 Cal.4th at 767–68, 21 Cal.Rptr.2d at 520, 855 P.2d 729, the *Clark* citation would not render the second habeas corpus petition improperly filed unless California imposed a filing condition—rather than a procedural bar—on successive or piecemeal petitions. *See,* e.g., *Smith v. Walls,* 276 F.3d 340, 344 (7th Cir.2002) ("Because

Court's citation to *Clark* was without reference to any specific page within the *Clark* opinion, respondent has not met his burden of demonstrating the California Supreme Court denied petitioner's second habeas corpus petition on the ground it was untimely. *See Gipson v. Schwartz*, 2007 WL 1411607, *2 (N.D.Cal.) ("The problem with respondent's argument is that the citation to *Clark* is ambiguous because the California Supreme Court did not cite to any particular page in the *Clark* opinion when it denied [petitioner's] second habeas petition [and] *Clark* discusses more than just the untimeliness procedural bar . . . ."). Thus, petitioner is entitled to statutory tolling for the time his second habeas petition was pending before the California Supreme Court, and affording petitioner such statutory tolling, petitioner's current federal habeas corpus petition is timely.

# V

 Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 2553, 115 L.Ed.2d 640 (1991); *Lee v. Kemna*, 534 U.S. 362, 375, 122 S.Ct. 877, 885, 151 L.Ed.2d 820 (2002); *King v. LaMarque*, 464 F.3d 963, 965 (9th Cir.2006). "The procedural default doctrine, which is a specific application of the general adequate and independent state grounds doctrine[,]" *Wells v. Maass*, 28 F.3d 1005, 1008 (9th Cir.1994); *Fields v. Calderon*, 125 F.3d 757, 761–62 (9th Cir.1997), *cert. denied*, 523 U.S. 1132, 118 S.Ct. 1826, 140 L.Ed.2d 962 (1998), "bar[s] federal habeas [review] when a state court declined to

address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman*, 501 U.S. at 729–30, 111 S.Ct. at 2554; *Hanson v. Mahoney*, 433 F.3d 1107, 1113 (9th Cir.), *cert. denied*, 547 U.S. 1180, 126 S.Ct. 2354, 165 L.Ed.2d 282 (2006). "To constitute a procedural bar, the state's rule had to be independent and adequate at the time [petitioner] purportedly failed to comply with it." *Townsend v. Knowles*, 562 F.3d 1200, 1206 (9th Cir.) (citing *Fields*, 125 F.3d at 760), *cert. denied*, —— U.S. ——, 130 S.Ct. 193, 175 L.Ed.2d 121 (2009). A state procedural rule is considered an independent bar if it is not interwoven with federal law or dependent upon a federal constitutional ruling. *Ake v. Oklahoma*, 470 U.S. 68, 75, 105 S.Ct. 1087, 1092, 84 L.Ed.2d 53 (1985); *Michigan v. Long*, 463 U.S. 1032, 1040–41, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983); *LaCrosse v. Kernan*, 244 F.3d 702, 704 (9th Cir.2001). "To be adequate, a state procedural rule must be 'well-established and consistently applied.'" *Townsend*, 562 F.3d at 1207 (citing *Bennett v. Mueller*, 322 F.3d 573, 583 (9th Cir.), *cert. denied*, 540 U.S. 938, 124 S.Ct. 105, 157 L.Ed.2d 251 (2003)); *Ford v. Georgia*, 498 U.S. 411, 423–24, 111 S.Ct. 850, 857, 112 L.Ed.2d 935 (1991); *King*, 464 F.3d at 965. "A procedural rule can be neither well-established nor consistently applied if it is not 'clear and certain.'" *Townsend*, 562 F.3d at 1207 (quoting *King*, 464 F.3d at 965).

 Procedural default is an affirmative defense, *Gray v. Netherland*, 518 U.S. 152, 165–66, 116 S.Ct. 2074, 2082, 135 L.Ed.2d 457 (1996); *Franklin v. Johnson*, 290 F.3d 1223, 1229–33 (9th Cir.2002), "and the state has the burden of showing that the

---

Illinois does not impose any filing preconditions for successive petitions, a successive petition that is later dismissed as procedurally barred is 'properly filed' as long as it conforms to Illinois' formal filing require-ments."); *Tate v. Pierson*, 177 F.Supp.2d 792, 798–99 (N.D.Ill.2001) (same), *affirmed by*, 52 Fed.Appx. 302 (7th Cir.2002), *cert. denied*, 538 U.S. 965, 123 S.Ct. 1757, 155 L.Ed.2d 519 (2003).

**1052**

default constitutes an adequate and independent ground." *Insyxiengmay v. Morgan,* 403 F.3d 657, 665–66 (9th Cir.2005); *Bennett,* 322 F.3d at 585. Here, respondent raises the affirmative defense that Grounds Two, Three, Four, Five, and Eight are procedurally defaulted, and federal habeas review of those claims is barred, because the California Supreme Court denied petitioner's second habeas corpus petition raising these claims with citations to *In re Clark, In re Dixon, In re Swain, People v. Duvall* and *In re Lindley.*[10] Answer at 5:24–6:16, 16:7–18:6, 21:7–14, 25:20–26:13, 30:4–10, 34:5–7. However, since the California Supreme Court's order is based, at least in part, on *Swain* and *Duvall,* which generally bar federal habeas corpus review, *see,* e.g., *Gaston v. Palmer,* 417 F.3d 1030, 1038–39 (9th Cir.2005) (emphasis added), *amended on other grounds by,* 447 F.3d 1165 (9th Cir.2006), *cert. denied,* 549 U.S. 1134, 127 S.Ct. 979, 166 L.Ed.2d 742 (2007); *Howard v. Campbell,* 305 Fed.Appx. 442, 445 (9th Cir.2008), *cert. denied,* ——— U.S. ———, 129 S.Ct. 2064, 173 L.Ed.2d 1142 (2009), and because the California Supreme Court's order does not identify the claims to which each citation is intended to apply, the California Supreme Court did not clearly and expressly rely on an adequate and independent state law ground to deny Grounds Three, Four, Five, and Eight, and those claims are not procedurally defaulted. *Valerio v. Crawford,* 306 F.3d 742, 774–75 (9th Cir.2002) (en banc), *cert. denied,* 538 U.S. 994, 123 S.Ct. 1788, 155 L.Ed.2d 695 (2003); *see also Calderon v. United States District Court (Bean),* 96 F.3d 1126, 1131 (9th Cir.1996) (" '[A] procedural default based on an ambiguous order that does not clearly rest on independent and adequate state grounds is not sufficient to preclude federal collateral review.' " (citations omitted)), *cert. denied,* 520 U.S. 1204, 117 S.Ct. 1569, 137 L.Ed.2d 714 (1997).

Respondent also asserts that Ground Two is procedurally barred because the California Court of Appeal, in its reasoned opinion affirming petitioner's judgment as modified, "note[d] that neither [petitioner nor Vanpool] objected to the prosecutor's argument[,]" and then ruled that petitioner's "failure to object precludes [him] from raising the prosecutorial misconduct claim [Ground Two] on appeal."[11] Lodgment no. 4 at 11 (citation

**10.** Specifically, respondent claims the citation to: (1) *In re Clark* means "unexplained successive and untimely filing [of a habeas corpus petition] bars consideration of the merits of habeas corpus petition," Answer at 5:25–27; (2) *In re Dixon* means a habeas corpus "will not lie where the claimed errors could have been, but were not, raised upon a timely appeal," *id.* at 5:27–6:1, 264 P.2d 513; (3) *In re Swain* means a "habeas petition must state in particularity the facts supporting the claim; vague, conclusionary allegations are insufficient," *id.* at 6:1–3, 209 P.2d 793; (4) *Duvall* means a habeas "petition must state fully and with particularity the facts on which relief is sought and must include copies of all reasonably available documentary evidence; if no prima facie case is pled, the state court will summarily deny the petition," *id.* at 6:4–7, 37 Cal.Rptr.2d 259, 886 P.2d 1252; and (5) *In re Lindley* means "habeas corpus ordinarily is

not competent to retry issues of fact or the merits of a defense; the sufficiency of the evidence to warrant the conviction of the petitioner is not a proper issue for consideration; habeas corpus is not an available remedy to review the rulings of the trial court with respect to the admission or exclusion of evidence, or to correct other errors of procedure occurring on the trial; and in a habeas corpus proceeding, one who establishes by a preponderance of substantial, credible evidence that he was convicted by perjured testimony knowingly presented by representatives of the State, but evidence which is uncertain, questionable or directly in conflict with other testimony does not afford a ground for relief upon habeas corpus." *Id.* at 6:7–16, 177 P.2d 918.

**11.** The California Court of Appeal also denied this claim on the merits, *see* Lodgment no. 4

omitted); *see also People v. Valencia,* 43 Cal.4th 268, 281, 74 Cal.Rptr.3d 605, 623, 180 P.3d 351 (2008) (Under California law, " '[a]s a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety.' " (citation omitted)), *cert. denied,* —— U.S. ——, 129 S.Ct. 198, 172 L.Ed.2d 158 (2008); *People v. Huggins,* 38 Cal.4th 175, 205, 41 Cal.Rptr.3d 593, 620, 131 P.3d 995 (2006) (same), *cert. denied,* 549 U.S. 998, 127 S.Ct. 501, 166 L.Ed.2d 374 (2006). This California rule is not interwoven with or dependent on federal law and was "firmly established and regularly followed state practice" prior to petitioner's trial. *Rich v. Calderon,* 187 F.3d 1064, 1070 (9th Cir.1999), *cert. denied,* 528 U.S. 1092, 120 S.Ct. 827, 145 L.Ed.2d 696 (2000); *see also Howard,* 305 Fed.Appx. at 444 ("We have held that failure to comply with California's contemporaneous objection rule results in a procedural default of a prosecutorial misconduct claim."); *Garrison v. McCarthy,* 653 F.2d 374, 377 (9th Cir.1981) ("California courts adhere to the contemporaneous objection rule barring appellate review of alleged errors that are not raised at trial by timely objection.").

Since respondent has raised the affirmative defense of procedural bar to Ground Two, the burden now shifts to petitioner to place the affirmative defense in issue. *King,* 464 F.3d at 966–67; *Bennett,* 322 F.3d at 586. "In most circumstances, the best method for petitioners to place the defense in issue is to assert 'specific factual allegations that demonstrate the inadequacy of the state procedure' by citing relevant cases." *King,* 464 F.3d at 967 (quoting *Bennett,* 322 F.3d at 586). However, petitioner has not done this; rather, petitioner's reply fails to address whether Ground Two is procedurally barred under California's contemporaneous objection rule.[12] *See* Reply at 2, 16–19. Thus, petitioner has not met his burden, *Ortiz v. Stewart,* 149 F.3d 923, 932 (9th Cir.1998), *cert. denied,* 526 U.S. 1123, 119 S.Ct. 1777, 143 L.Ed.2d 806 (1999), and he has procedurally defaulted Ground Two. *Rich,* 187 F.3d at 1070.

■■■■■■ When a habeas petitioner "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscar-

at 11–12, which does not prevent petitioner's claim from being procedurally barred in this district court. *See Harris v. Reed,* 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 1044 n. 10, 103 L.Ed.2d 308 (1989) ("'[A] state court need not fear reaching the merits of a federal claim in an alternate holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law."); *Bargas v. Burns,* 179 F.3d 1207, 1214 (9th Cir. 1999) ("The state court concluded that petitioner procedurally defaulted—a state ground—and alternatively rejected petition-

er's claim on the merits—a constitutional ground. The alternative federal law holding of the court in no way disturbs the independent state law ground for dismissal."), *cert. denied,* 529 U.S. 1073, 120 S.Ct. 1686, 146 L.Ed.2d 493 (2000).

12. Since the Ninth Circuit has found California's contemporaneous objection rule to be an adequate and independent state law ground, *see,* e.g., *Paulino v. Castro,* 371 F.3d 1083, 1093 (9th Cir.2004); *Rich,* 187 F.3d at 1070, petitioner's conclusory assertion that any procedural bars are not "independent" or "adequate" (Reply at 2) is insufficient to place the procedural default defense at issue.

riage of justice." *Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565; *Medley v. Runnels*, 506 F.3d 857, 869 (9th Cir.2007) (en banc), *cert. denied*, 552 U.S. 1316, 128 S.Ct. 1878, 170 L.Ed.2d 754 (2008). The "cause" prong requires petitioner to demonstrate some "objective factor" that precluded him from raising his claims in state court. *McCleskey v. Zant*, 499 U.S. 467, 493–94, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991); *High v. Ignacio*, 408 F.3d 585, 589 (9th Cir.2005). Ignorance or inadvertence does not constitute cause for a state procedural default. *Murray v. Carrier*, 477 U.S. 478, 486–87, 106 S.Ct. 2639, 2644–45, 91 L.Ed.2d 397 (1986); *Moormann v. Schriro*, 426 F.3d 1044, 1058 (9th Cir.2005), *cert. denied*, 548 U.S. 927, 126 S.Ct. 2984, 165 L.Ed.2d 990 (2006). To show prejudice, petitioner must demonstrate "not merely that the errors ... created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1982); *Carrier*, 477 U.S. at 494, 106 S.Ct. at 2648. The petitioner has the burden of proving both cause and prejudice. *Bousley v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998); *Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565.

■ Here, petitioner claims he "has shown cause and prejudice" because his "appellate counsel is required to raise any issue of merit" and any procedural "bar must be overcome for counsels [sic] failure to recognize the issue and raise it in the direct appeal." Reply at 19. However, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Carrier*, 477 U.S. at 486, 106 S.Ct. at 2644; *Cockett v. Ray*, 333 F.3d 938, 943 (9th Cir.2003). Rather, attorney ignorance or inadvertence does not

constitute "cause" unless it rises to the level of constitutionally ineffective assistance of counsel. *Coleman*, 501 U.S. at 753–54, 111 S.Ct. at 2567; *Carrier*, 477 U.S. at 488, 106 S.Ct. at 2645; *Cockett*, 333 F.3d at 944. Here, since petitioner "failed to raise an ineffective assistance of appellate counsel claim on this issue, ... he cannot show cause to excuse his defaults." *Cook v. Schriro*, 538 F.3d 1000, 1029 (9th Cir.2008), *cert. denied*, —— U.S. ——, 129 S.Ct. 1033, 173 L.Ed.2d 301 (2009); *Carrier*, 477 U.S. at 489, 106 S.Ct. at 2646; *see also Cockett*, 333 F.3d at 943 ("To constitute cause for procedural default of a federal habeas claim, the constitutional claim of ineffective assistance of counsel must first have been presented to the state courts as an independent claim.").

■ Moreover, although petitioner conclusorily asserts "it would be a miscarriage of justice" not to consider Ground Two on the merits, Reply at 19, the miscarriage of justice exception only applies if petitioner can show that a "a constitutional violation has probably resulted in the conviction of one who is actually innocent[,]" *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 867, 130 L.Ed.2d 808 (1995); *Carrier*, 477 U.S. at 496, 106 S.Ct. at 2649, and petitioner's conclusory assertion is clearly insufficient to meet this standard. *See Casey v. Moore*, 386 F.3d 896, 921 n. 27 (9th Cir.2004) ("[T]he fundamental miscarriage of justice exception applies only when a constitutional violation probably has resulted in the conviction of one actually innocent of a crime and petitioner supplements his constitutional claim with a colorable showing of factual innocence, which [petitioner] has not done."), *cert. denied*, 545 U.S. 1146, 125 S.Ct. 2975, 162 L.Ed.2d 899 (2005). Therefore, Ground Two is procedurally barred, and the Court will not consider it.

## VI

The AEDPA "circumscribes a federal habeas court's review of a state court decision." *Lockyer v. Andrade,* 538 U.S. 63, 70, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003); *Wiggins v. Smith,* 539 U.S. 510, 520, 123 S.Ct. 2527, 2534, 156 L.Ed.2d 471 (2003). As amended by AEDPA, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—[¶] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or [¶] (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, under AEDPA, a federal court shall presume a state court's determination of factual issues is correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

■ The California Supreme Court reached the merits of Grounds One, Seven, Nine and Ten and portions of Ground Six when it denied petitioner's request for review and his first habeas corpus petition without comment or citation to authority. *Luna v. Cambra,* 306 F.3d 954, 960 (9th Cir.2002), *amended by,* 311 F.3d 928 (9th Cir.2002); *Hunter v. Aispuro,* 982 F.2d 344, 348 (9th Cir.1992), *cert. denied,* 510 U.S. 887, 114 S.Ct. 240, 126 L.Ed.2d 194 (1993). "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991); *Medley,* 506 F.3d at 862. Here, the California Court of Appeal issued a reasoned decision addressing Ground One, and this Court will consider that opinion. However, as to Grounds Seven, Nine and Ten and portions of Ground Six, since no state court has provided a reasoned decision addressing the merits of petitioner's claims, this Court must conduct "an independent review of the record" to determine whether the California Supreme Court's ultimate decision denying those claims was contrary to, or an unreasonable application of, clearly established federal law. *Libberton v. Ryan,* 583 F.3d 1147, 1161 (9th Cir.2009); *Matylinsky v. Budge,* 577 F.3d 1083, 1090 (9th Cir.2009), *cert. denied,* —— U.S. ——, 130 S.Ct. 1154, —— L.Ed.2d —— (2009). Furthermore, as to Grounds Three, Four, Five and Eight, and portions of Ground Six, "[b]ecause the [California] courts did not reach the merits of [these] claim[s], federal habeas review is not subject to the deferential standard that applies under AEDPA to 'any claim that was adjudicated on the merits in State court proceedings.' Instead, the claim is reviewed *de novo.*" *Cone v. Bell,* —— U.S. ——, 129 S.Ct. 1769, 1784, 173 L.Ed.2d 701 (2009) (citations omitted); *Tanner v. McDaniel,* 493 F.3d 1135, 1139 (9th Cir.), *cert. denied,* 552 U.S. 1068, 128 S.Ct. 722, 169 L.Ed.2d 565 (2007).

## VII

■ In Ground One, petitioner claims he was denied his Sixth and Fourteenth Amendment rights to a fair trial when the trial court refused to strike the testimony of Eric Thomas, who entered into a plea bargain with the prosecution that required him to testify consistently with an interview he gave the prosecutor and granted the prosecutor authority to determine

whether the testimony was truthful. The California Court of Appeal set forth the following facts underlying this claim:

> ... Eric Thomas (no relation to the victim Vincent Thomas) testified at trial after having entered into a plea agreement with the prosecutor that provided that Eric[ FN5] would plead guilty to one count of assault and admit a gang allegation. The agreement, as recounted by the prosecutor, was that Eric would be released from custody before sentencing and, in exchange, would provide "truthful testimony in the trial against [petitioner and his codefendant]. He has represented that a statement that he gave at the bureau of investigation on a videotape was a truthful statement, and he will testify truthfully." If Eric testifies truthfully, the prosecutor stated that he would get "three years of formal probation and he will be sentenced to credit for time served." When the trial court asked who would decide whether Eric's testimony was truthful, the prosecutor answered, "Well, that will have to be the district attorney's office. That will have to be me." Eric's attorney added his understanding that "when we are talking about truthful testimony, I would believe that to mean testimony Mr. Thomas has already given in [sic] videotape, so if it's consistent with those statements."

---

[ FN5] We refer to the witness by his first name in order to distinguish him from others involved in this case who also have the surname Thomas.

> After Eric Thomas testified at trial, counsel for both [petitioner and Vanpool] moved to strike his testimony, asserting that the plea bargain was improper because it required him to testify in accordance with a prior statement and also because the prosecutor was the sole arbiter of whether his testimony was truthful.... The trial court denied [petitioner's and Vanpool's] motion to strike Eric Thomas's testimony.

Lodgment no. 4 at 6–7. The Court of Appeal then proceeded to deny petitioner's claim, holding:

> In *People v. Allen* (1986) 42 Cal.3d 1222, 232 Cal.Rptr. 849, 729 P.2d 115, the Supreme Court explained that, " '[A] defendant is denied a fair trial if the prosecution's case depends substantially upon accomplice testimony and the accomplice witness is placed, either by the prosecution or the court, under a strong compulsion to testify in a particular fashion.' Thus, when the accomplice is granted immunity subject to the condition that his testimony substantially conform to an earlier statement given to police, or that his testimony result in the defendant's conviction, the accomplice's testimony is 'tainted beyond redemption' and its admission denies the defendant a fair trial. On the other hand, although there is a certain degree of compulsion inherent in any plea agreement or grant of immunity, it is clear that an agreement requiring only that the witness testify fully and truthfully is valid." [¶] The plea bargain with Eric Thomas required him to testify truthfully and therefore comports with *People v. Allen.* The reference to Eric's earlier statement to the police does not render the plea agreement coercive. A plea agreement that requires a witness to testify completely and truthfully, "even if it is clear the prosecutor believes the witness's prior statement to the police is the truth, and deviation from that statement in testimony may result in the withdrawal of the plea offer, does not place such compulsion upon the witness as to violate the defendant's right to a fair trial." As set out above, both the prosecutor and Eric Thomas's attorney stated that Eric had represented that his earlier, videotaped statement was the truth. That statement became the standard or

benchmark for determining whether Eric's trial testimony was truthful but reference to that statement in the plea agreement did not violate [petitioner's] right to a fair trial. [¶] The fact that the prosecutor would determine whether Eric testified truthfully does not render the plea agreement coercive. In claiming otherwise, [petitioner] rel[ies] on *People v. Bittaker,* a case that involved a plea agreement that specified the prosecutor " 'shall have authority and discretion to determine whether or not [the witness] testified truthfully and completely' " and, if requested by the witness, a superior court judge " 'shall determine whether or not there has been an abuse of such authority and discretion.' " In reviewing the quoted provision to determine whether the plea agreement compelled the witness to testify in a particular manner and thus violated the defendant's right to a fair trial, the Supreme Court found the language regarding judicial review "troubling." In particular, the court noted that the controlling legal principles "are clear: if [the witness] testified fully and truthfully, he is entitled to the benefit of his bargain; if not, the district attorney has discretion to revoke the bargain. We do not believe they can be altered by contract so as to limit the court to reviewing the district attorney's discretionary finding as to whether [the witness] told the truth." Although the court counseled against including "language in a plea bargain which purports to give the district attorney, and not the court, discretion to determine whether the witness testified truthfully" it nevertheless found that the language did not result in reversible error because the language did not "present[ ] any significant risk of inducing [the witness] to give false or incomplete testimony." [¶] The same result pertains here. To the extent the district attorney rather than the court was empowered in this case to determine whether Eric's testimony was truthful, nothing in the record suggests that provision posed any significant risk of inducing him to testify falsely or incompletely. The prosecution and defense questioned Eric thoroughly about the events at issue in this case and about the plea agreement. In doing so, they exposed Eric's impetus to testify and also revealed any inconsistencies in his testimony and the earlier statement. Consequently, we must conclude here, as the Supreme Court did in *People v. Bittaker,* that although "troubling" the provision of the agreement that empowered the district attorney to determine whether Eric was telling the truth, if error, did not violate [petitioner's] right to a fair trial.

Lodgment no. 4 at 7–9 (some citations omitted).

There is no merit to petitioner's claim since "there is no Supreme Court case law establishing that consistency clauses [in plea agreements] violate due process or any other constitutional provision."[13] *Cook,* 538 F.3d at 1017. Thus, the California Supreme Court's denial of Ground One

---

**13.** Moreover, "[a]n agreement that requires a witness to testify truthfully in exchange for a plea is proper so long as 'the jury is informed of the exact nature of the agreement, defense counsel is permitted to cross-examine the accomplice about the agreement, and the jury is instructed to weigh the accomplice's testimony with care.' " *Allen v. Woodford,* 395 F.3d 979, 995–96 (9th Cir.) (quoting *United States v. Yarbrough,* 852 F.2d 1522, 1537 (9th Cir.), *cert. denied,* 488 U.S. 866, 109 S.Ct. 171, 102 L.Ed.2d 140 (1988)), *cert. denied,* 546 U.S. 858, 126 S.Ct. 134, 163 L.Ed.2d 137 (2005). Here, the jury was thoroughly informed of the plea agreement, and the jury was specifically instructed that Eric Thomas was an accomplice as a matter of law and an accomplice's testimony should be viewed with caution. *See* CT 221–22; Reporter's Transcript ("RT") 492:21–755:5.

is neither contrary to, nor an unreasonable application of, clearly established federal law. *Id.*; *Carey v. Musladin*, 549 U.S. 70, 77, 127 S.Ct. 649, 654, 166 L.Ed.2d 482 (2006); *see also Stevenson v. Lewis*, 384 F.3d 1069, 1071 (9th Cir.2004) ("If there is no Supreme Court precedent that controls a legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly-established federal law."), *cert. denied*, 543 U.S. 1191, 125 S.Ct. 1408, 161 L.Ed.2d 197 (2005).

## VIII

▆▆▆▆ A federal court, in conducting habeas review, is limited to deciding whether a conviction violates the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991); *Engle v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982). Federal habeas corpus relief "does not lie for errors of state law[,]" *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990); *McGuire*, 502 U.S. at 67, 112 S.Ct. at 480; *see also Dugger v. Adams*, 489 U.S. 401, 409, 109 S.Ct. 1211, 1216–17, 103 L.Ed.2d 435 (1989) ("[T]he availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution."), and the petitioner "may not transform a state-law issue into a federal one merely by asserting a [constitutional] violation." *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir.), *cert. denied*, 522 U.S. 881, 118 S.Ct. 208, 139 L.Ed.2d 144 (1997).

Here, Ground Three, in which petitioner claims the trial court erroneously admitted testimony of threats witnesses received in violation of his constitutional right to a fair trial, is not a cognizable claim. Although petitioner cursorily refers to the Sixth Amendment or right to a fair trial, the gravamen of his claim is that the trial court abused its discretion and improperly applied California Evidence Code § 352, and petitioner cites only state law cases to support his claim. Petition at 6–6b; Reply at 20–21. Thus, Ground Three is not cognizable since federal habeas relief is available "only for constitutional violation, not for abuse of discretion." *Williams v. Borg*, 139 F.3d 737, 740 (9th Cir.), *cert. denied*, 525 U.S. 937, 119 S.Ct. 353, 142 L.Ed.2d 292 (1998).

## IX

▆▆▆▆ To review the sufficiency of evidence in a habeas corpus proceeding, the Court must determine whether " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Jeffers*, 497 U.S. at 781, 110 S.Ct. at 3102–03 (citation omitted); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). All evidence must be considered in the light most favorable to the prosecution, *Lewis*, 497 U.S. at 782, 110 S.Ct. at 3103; *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789, and if the facts support conflicting inferences, reviewing courts "must presume-even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793; *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir.2004) (per curiam); *Turner v. Calderon*, 281 F.3d 851, 881–82 (9th Cir.2002). Furthermore, under AEDPA, federal courts must "apply the standards of *Jackson* with an additional layer of deference." [14] *Juan H. v. Allen*, 408 F.3d 1262,

14. As discussed above, the AEDPA standard of review does not apply to Ground 4(a), but does apply to Ground 10.

1274 (9th Cir.2005), *cert. denied*, 546 U.S. 1137, 126 S.Ct. 1142, 1145, 163 L.Ed.2d 1000 (2006); *Briceno v. Scribner*, 555 F.3d 1069, 1078 (9th Cir.2009). These standards are applied to the substantive elements of the criminal offenses under state law. *Jackson*, 443 U.S. at 324 n. 16, 99 S.Ct. at 2792 n. 16; *Chein v. Shumsky*, 373 F.3d 978, 983 (9th Cir.) (en banc), *cert. denied*, 543 U.S. 956, 125 S.Ct. 415, 160 L.Ed.2d 318 (2004).

### A. Ground Four (a)—Gang Enhancement (P.C. § 186.22(b)(1)):

▮▮▮ The California Street Terrorism Enforcement and Prevention Act ("STEP Act"), P.C. §§ 186.20 et seq., is a statutory scheme enacted to further the "eradication of criminal activity by street gangs." P.C. § 186.21 (2000). "To warrant a gang enhancement, California law requires the prosecutor to prove two things. First, the prosecutor must demonstrate that the defendant committed a felony 'for the benefit of, at the direction of, or in association with [a] criminal street gang.' [15] Cal.Penal Code § 186.22(b)(1). Second, the prosecutor must show that the defendant committed the crime 'with the specific intent to promote, further, or assist in any criminal conduct by gang members.'" *Briceno*, 555 F.3d at 1078 (footnote added); P.C. § 186.22(b)(1) (2000).[16] "[T]he second step is not satisfied by evidence of mere membership in a criminal street gang alone." *Id.*; *see also People v. Morales*, 112 Cal.App.4th 1176, 1198, 5 Cal.Rptr.3d 615 (2003) ("[S]pecific intent to *benefit* the gang is not required. What is required is the 'specific intent to promote, further, or assist in any criminal conduct by gang members ....'" (emphasis in

---

**15.** A "criminal street gang" is defined in P.C. § 186.22(f) as:

> any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in paragraphs (1) to (25), inclusive, of subdivision (e), having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity.

P.C. § 186.22(f) (2000); *People v. Gardeley*, 14 Cal.4th 605, 616, 59 Cal.Rptr.2d 356, 363, 927 P.2d 713, *cert. denied*, 522 U.S. 854, 118 S.Ct. 148, 139 L.Ed.2d 94 (1997). The enumerated criminal acts consist of: assault with a deadly weapon or by means of force likely to produce great bodily injury; robbery; unlawful homicide or manslaughter; the sale, possession for sale, transportation, manufacture, offer for sale, or offer to manufacture controlled substances; shooting at an inhabited dwelling or occupied motor vehicle; discharging or permitting the discharge of a firearm from a motor vehicle; arson; the intimidation of witnesses and victims; grand theft; grand theft of any firearm, vehicle, trailer, or vessel; burglary; rape; looting; money laundering; kidnapping; mayhem; aggravated mayhem; torture; felony extortion; felony vandalism; carjacking; the sale, delivery, or transfer of a firearm; possession of a pistol, revolver, or other firearm capable of being concealed upon the person; threats to commit crimes resulting in death or great bodily injury; and theft and unlawful taking or driving of a vehicle. P.C. § 186.22(e) (1–25) (2000).

**16.** The version of P.C. § 186.22(b)(1) in effect when the crime occurred and at petitioner's trial provided, in pertinent part:

> Except as provided in paragraphs (4) and (5), any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members shall, upon conviction of that felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished as follows:
>
> \* \* \*
>
> (C) If the felony is a violent felony, as defined in subdivision (c) of Section 667.5, the person shall be punished by an additional term of 10 years.

P.C. § 186.22(b)(1) (2000).

original)). "[T]o prove the elements of the criminal street gang enhancement, the prosecution may ... present expert testimony on criminal street gangs." *Hernandez*, 33 Cal.4th at 1047–48, 16 Cal.Rptr.3d at 885–86, 94 P.3d 1080; *Gardeley*, 14 Cal.4th at 617–20, 59 Cal.Rptr.2d at 363–66, 927 P.2d 713.

First, petitioner claims there was no evidence he was a member of the Raymond Street Crips. However, as discussed herein, this is not true and, in any event, "gang membership is not an element [of the gang enhancement]; nor does one need to be a gang member or associate to commit an act for the benefit of, in association with, or at the direction of a street gang." *People v. Valdez*, 58 Cal.App.4th 494, 505, 68 Cal.Rptr.2d 135 (1997).

Second, petitioner claims there was no evidence his actions were in furtherance of gang activity.[17] The Court disagrees. Eric Thomas, a long-standing member of the Raymond Street Crips gang testified as a quasi-expert witness, as well as a percipient witness. *See*, e.g., RT 576:13–14 ("Within the gang culture, [Eric's] more than capable of rendering an opinion."); RT 1448:20–22 ("You heard from Eric Thomas. He was basically a gang expert...."). Eric testified he had been a gang member for eight or nine years, RT 506:9–507:11, as was petitioner, who was known as "Crazy D." RT 494:7–19, 507:12–510:3. The gang, which is known universally as "Raymond Street Crips" or simply as "Raymond," RT 504:17–28, 506:1–8, is well known in Los Angeles, RT 537:16–17, its turf is located on several blocks around 120th Street in Inglewood, California, RT 537:4–538:4, and, as a Crips gang, its identifying color is blue. RT 538:26–27. Eric described the gang's activities as including robbery, shootings, selling drugs and assaults aimed at bolstering the gang reputation or in retaliation for some wrong. RT 515:22–517:19, 529:1–533:25. Eric further testified that the gang has as many as 100 or more members, RT 536:12–23, including himself, Vanpool and petitioner, who was an O.G. or "original gangster."[18] RT 494:7–19, 506:9–507:11, 507:12–510:3, 533:4–8, 533:26–534:6, 543:26–546:7. Eric stated the assault on Vincent was a Raymond Street Crips gang activity, with gang members, including petitioner, Vanpool and others intentionally confronting and fighting Vincent, in retaliation or because petitioner or "Crazy D got his butt kicked over at Mel's and possibly over at Victor Street." RT 574:6–577:10. This evidence is more than sufficient to demonstrate petitioner "committed the crime 'with the specific intent to promote, further, or assist in any criminal conduct by gang members.'" *Briceno*, 555 F.3d at 1078; *People v. Romero*, 140 Cal.App.4th 15, 20, 43 Cal.Rptr.3d 862 (2006).

Third, to the extent petitioner claims there is insufficient evidence that the Ray-

---

**17.** The petitioner did not raise this claim on appeal; however, co-defendant Vanpool did, *see* Lodgment no. 4 at 17–18 & n. 9, and in denying Vanpool's claim, the California Court of Appeal found:

Eric Thomas testified, in pertinent part, that defendant Vanpool participated in the stabbing of Vincent Thomas and while doing so was heard to say that Vincent should never claim "Raymond" again. From that testimony the jury could reasonably infer that Vanpool committed that crime [the stabbing of Vincent Thomas] in order to promote the reputation of "Raymond."

That inference is sufficient to support the jury's implied finding that Vanpool committed the stabbing "for the benefit" of the Raymond Street Crips.

Lodgment no. 4 at 17–18. Given the evidence discussed herein, this rationale also applies to petitioner since he was convicted of violating P.C. § 245(a)(1) as an aider and abettor of Vanpool's stabbing of Vincent Thomas.

**18.** Crump also testified petitioner and Vanpool were Raymond Street gang members. RT 997:4–998:13, 1005:11–18.

mond Street Crips is a "criminal street gang," as defined in P.C. § 186.22, his claim is without merit. As set forth above, California law defines a "criminal street gang" as an ongoing association of at least three people with a common name or identifying sign or symbol, which "has as one of its primary activities the commission of one or more of the criminal acts" enumerated in P.C. § 186.22(e), and whose members, individually or collectively, "have engaged in a 'pattern of criminal gang activity' by committing, attempting to commit, or soliciting" at least two predicate offenses within the statutory period.[19] *Hernandez,* 33 Cal.4th at 1047, 16 Cal. Rptr.3d at 885, 94 P.3d 1080 (citation and some internal quotation marks omitted); *Gardeley,* 14 Cal.4th at 616–17, 59 Cal. Rptr.2d at 363, 927 P.2d 713. Thus, under P.C. § 186.22(e), "[t]he term 'pattern of criminal gang activity' only requires: the attempted or completed commission or a conspiracy to commit two or more of the . . . offenses [enumerated in P.C. § 186.22(e) ]; one of the offenses must have occurred after September 26, 1988, the effective date of [the statute]; the last of the two requisite offenses must have occurred within three years after the first crime; [and] the predicate crimes must have either been committed on separate occasions or by at least two different persons." *People v. Augborne,* 104 Cal. App.4th 362, 374–75, 128 Cal.Rptr.2d 258 (2002); *People v. Loeun,* 17 Cal.4th 1, 8–10, 69 Cal.Rptr.2d 776, 780–81, 947 P.2d 1313 (1998), *cert. denied,* 523 U.S. 1129, 118 S.Ct. 1820, 140 L.Ed.2d 957 (1998). For the purpose of establishing a "pattern of criminal gang activity," the predicate offenses need not be "gang related," and the charged offense may serve as a predicate offense. *Gardeley,* 14 Cal.4th at 621–

25, 59 Cal.Rptr.2d at 366–69, 927 P.2d 713; *see also Loeun,* 17 Cal.4th at 11, 69 Cal. Rptr.2d at 781, 947 P.2d 1313 ("[T]he prosecution can establish the requisite 'pattern' exclusively through evidence of crimes committed contemporaneously with the charged incident.").

Here, Eric Thomas testified he pled guilty to assault with a deadly weapon with a gang enhancement for his role in the stabbing of Vincent. RT 494:27–497:22. Moreover, the trial court took judicial notice that: (1) on November 18, 1996, Donny Ray McKinley was convicted of first-degree murder, four counts of attempted robbery, and assault with a deadly weapon, all of which occurred on January 16, 1995, he personally used a handgun in the commission of the offenses, and the murder occurred during the commission of a robbery and commercial burglary; (2) on December 23, 1997, Donald Leon Hammond was convicted of two counts of robbery, both crimes occurring on December 6, 1997, with both crimes occurring at the direction of, or for the benefit of a criminal street gang with the specific intent to promote, further or assist in any criminal conduct of the gang members; (3) on April 8, 1993, Wilfred Clyde Smith was convicted of attempted robbery for a crime occurring on January 23, 1993; (4) on March 1, 1994, Wilfred Clyde Smith was convicted of robbery for a crime occurring on January 19, 1994; and (5) on March 31, 1994, Eric Thomas was convicted of attempted robbery for a crime occurring on January 22, 1994. RT 1299:16–1302:23; *see also* RT 540:12–541:27, 717:11–20 (Eric Thomas admitted he was convicted of armed robbery on March 31, 1994). Eric Thomas also testified: (1) he "believe[d]" Donny Ray

---

**19.** To fall within the statutorily defined period, at least one of the predicate offenses must have occurred "after the effective date" of the STEP Act, September 26, 1988, and the last of the predicate offenses must have occurred "within three years after a prior offense." P.C. § 186.22(e) (2000); *Gardeley,* 14 Cal.4th at 616, 59 Cal.Rptr.2d at 363, 927 P.2d 713.

McKinley was a Raymond Street Crips gang member in 1995, RT 714:20–28; (2) Donald Leon Hammond was a Raymond Street Crips gang member when he committed the robberies in 1997, RT 716:16–717:10; and (3) Wilfred Smith was a Raymond Street Crips gang member who had been in the gang longer than Thomas. RT 548:23–549:24. Based on this evidence, "the prosecution established the requisite 'pattern of criminal gang activity' consisting of 'two or more' statutorily enumerated offenses that were 'committed on separate occasions, or by two or more persons.' " *Gardeley*, 14 Cal.4th at 625, 59 Cal.Rptr.2d at 368–69, 927 P.2d 713.

Therefore, there was sufficient evidence to show the assault and stabbing of Vincent Thomas was associated with, at the direction of and to benefit the Raymond Street Crips gang, and was committed with the specific intent to retaliate against Vincent Thomas for the earlier beating of petitioner, and to bolster the Raymond Street Crips gang's reputation after the earlier fights; thus, promoting the interests of the gang and its advancement. *Fellows v. Dexter*, 551 F.Supp.2d 969, 981–82 (C.D.Cal.2008).

### B. Ground Ten

#### 1. Assault With A Deadly Weapon (P.C. § 245(a)(1)):

P.C. § 245(a)(1) "punishes assault 'with a deadly weapon [or instrument] other than a firearm or by any means of force likely to produce great bodily injury.' " *People v. Miles*, 43 Cal.4th 1074, 1084, 77 Cal.Rptr.3d 270, 278, 183 P.3d 1236 (2008) (quoting P.C. § 245(a)(1)). A deadly weapon within the meaning of P.C. § 245(a)(1) "is 'any object, instrument, or weapon which is used in such a manner as

to be capable of producing and likely to produce, death or great bodily injury[,]' " *People v. Aguilar*, 16 Cal.4th 1023, 1028–29, 68 Cal.Rptr.2d 655, 658, 945 P.2d 1204 (1997) (citation omitted); *In re R.P.*, 176 Cal.App.4th 562, 567, 97 Cal.Rptr.3d 822 (2009), which obviously can include a knife. *See*, e.g., *People v. Pruett*, 57 Cal.App.4th 77, 86, 66 Cal.Rptr.2d 750 (1997) ("Nearly all knives have sharp edges and points which are designed to cut things, and knives can be—and all too often are—employed to cut-and kill-people."); *People v. Herd*, 220 Cal.App.2d 847, 850, 34 Cal. Rptr. 141 (1963) ("Although not an inherently deadly weapon, a knife becomes such when used in such a manner as to cause severe bodily injury.").

Under California law an "aider and abettor is a person who, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime." *People v. Jurado*, 38 Cal.4th 72, 136, 41 Cal.Rptr.3d 319, 371, 131 P.3d 400 (2006) (citations and internal quotation marks omitted), *cert. denied*, 549 U.S. 956, 127 S.Ct. 383, 166 L.Ed.2d 276 (2006); *People v. Prettyman*, 14 Cal.4th 248, 259, 58 Cal. Rptr.2d 827, 832–33, 926 P.2d 1013 (1996); *see also* P.C. § 31.[20] The requisite intent to render such aid must be formed prior to or during the commission of the crime. *People v. Cooper*, 53 Cal.3d 1158, 1164, 282 Cal.Rptr. 450, 455, 811 P.2d 742 (1991); *People v. Beeman*, 35 Cal.3d 547, 558, 199 Cal.Rptr. 60, 66–67, 674 P.2d 1318 (1984). Whether an individual is an aider and abettor depends on whether the crime committed by the perpetrator was reason-

---

**20.** P.C. § 31 provides:

All persons concerned in the commission of a crime ... whether they directly commit the act constituting the offense, or aid and abet in its commission, ... are principals in any crime so committed.

P.C. § 31.

ably foreseeable. *People v. Hayes,* 21 Cal.4th 1211, 1271 n. 20, 91 Cal.Rptr.2d 211, 253 n. 20, 989 P.2d 645 (2000), *cert. denied,* 531 U.S. 980, 121 S.Ct. 431, 148 L.Ed.2d 438 (2000); *see also People v. Karapetyan,* 140 Cal.App.4th 1172, 1177, 45 Cal.Rptr.3d 245 (2006) ("[T]he question is not whether the aider and abettor *actually* foresaw the ... crime, but whether, judged objectively, it was *reasonably* foreseeable." (citation and internal quotation marks omitted; emphasis in original)).

▪ Here, petitioner was convicted of violating P.C. § 245(a)(1) on an aiding and abetting theory. At trial, Vincent Thomas identified the group that pursued and attacked him in the park as being the same group involved in the fights at Mel's Liquor and at Victor Street, RT 91:18–94:10, and Tracylin Crump testified that both petitioner and Vanpool were in this group. RT 995:12–1000:14, 1003:14–17. Eric Thomas testified that the assault on Vincent Thomas was a Raymond Street Crips gang activity, with gang members, including petitioner, Vanpool, and others intentionally confronting and fighting Vincent in retaliation or because petitioner or "Crazy D got his butt kicked over at Mel's and possibly over at Victor Street." [21] RT 574:6–577:10. Indeed, prior to the stabbing of Vincent Thomas, while petitioner was still on Victor Street, petitioner stated, " 'All you Niggas out here in Moreno Valley claimin' Raymond who never been in the hood are gonna get put on the hood or get smoked[,]' " and petitioner referred to Vincent and his friends as "busters," RT 314:18–315:11, 325:16–327:6, a derogatory term meaning a "low-class wanna-be thug[,]" someone claiming to be something

he's not, or " '[s]omeone who does not follow the rules of gang-bangin,' " RT 144:3–8, 590:25–591:9, while Crump heard petitioner say "it wasn't over, that they were gonna get them." [22] RT 1015:21–28. Vincent Thomas testified a female stabbed him multiple times with a knife, RT 47:26–52:23, 93:12–94:16, 104:1–105:9; *see also* RT 764:19–775:19 (testimony of emergency room physician who treated Vincent describing the nature and extent of Vincent's injuries), and told investigator Carl Smith it was Vanpool who stabbed him, RT 864:9–865:2, and both Eric and Crump testified that Vanpool had a knife and stabbed Vincent. RT 572:17–573:22. Mack stated, however, that petitioner had an "ice pick knife thing" and "pok[ed]" Vincent before handing it to Vanpool, who "did the rest." RT 341:24–28. Eric stated that while Vincent was being attacked, he heard people saying "Raymond" and "Raymond Crip, whew, whew[,]," RT 574:15–23, while Crump said Vanpool told Vincent "[d]on't ever claim Raymond again[,]" RT 1036:22–1037:2, and Mack testified petitioner told Vincent not to claim his hood anymore and kicked Vincent. RT 348:26–349:6. Crump also testified that while Vincent was being stabbed, she saw petitioner in the park pointing a gun toward the park's "play area," RT 1033:23–1035:23, 1038:22–1040:3, 1286:22–1287:13, which was close to where Vincent was knocked to the ground and being beaten and stabbed. RT 94:12–16, 568:24–569:23. Eric Thomas testified that when he initially saw petitioner, petitioner had his arm extended, was holding what Eric believed was a gun, and was yelling while people were running away from him, RT 566:17–568:9, and Vincent stated that

---

**21.** Crump and LaJoyce Mack testified petitioner had a bloody swollen lip following the fight at Mel's Liquor, RT 312:27–313:7, 1015:2–10, while Renika Ransom testified petitioner's head was bleeding and "busted" following the Mel's Liquor fight. RT 1224:17–1225:6.

**22.** Eric also testified that, at some point, petitioner told him "I would kill them little Niggas, or something, 'cause they fucked up my lip, or somthin'. He was mad." RT 701:20–27.

while he was on the ground being beaten and stabbed, petitioner had his back to the attack and was pointing his gun in an effort to keep Vincent's brother and friends from helping Vincent.[23] RT 108:26–110:8. Furthermore, Mack testified that petitioner stuck a gun in Vincent Thomas's face, but the clip dropped out.[24] RT 455:7–458:7. Additionally, Vincent told Smith that after the fight at Mel's Liquor, "Big Crazy D" told Vincent and his friends that he was going to get a gun, and, later, at the park, "Big Crazy D" pulled up in a car, chased Vincent with a gun until Vincent was cornered, beaten and stabbed. RT 865:3–866:17, 867:22–869:17. Eric Thomas testified that petitioner was known as "Crazy D." RT 494:12–17. After the incident, Vanpool stole the truck Vincent's brother, a member of the Grape Street Watts—a rival gang to the Raymond Street Crips—was driving, and the truck was later found with the car stereo missing, the motor no longer working, and covered in spray paint, including "RA", standing for "Raymond Avenue Crips," "Fucc [sic] Simpin Sam, rest in pain, Buster[,]" which is "disrespect[ing]" a dead Grape Street Watts gang member, and "GSW" which was crossed out with a "187" next to it, which is a sign of disrespect to the Grape Streets Watts. RT 115:24–117:3, 206:12–208:19, 583:21–584:16, 589:14–592:4, 593:7–594:3.

Since the testimony of a single witness is sufficient to uphold a conviction, *Bruce,*

376 F.3d at 957–58; *United States v. Larios,* 640 F.2d 938, 940 (9th Cir.1982), and a federal court in a habeas corpus proceeding cannot redetermine the credibility of witnesses when the federal court did not observe those witnesses' demeanor, *Marshall v. Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 851, 74 L.Ed.2d 646 (1983), the evidence discussed herein is more than sufficient to support petitioner's conviction for assault with a deadly weapon. *See,* e.g., *People v. Hoang,* 145 Cal.App.4th 264, 275–76, 51 Cal.Rptr.3d 509 (2006) (Sufficient evidence supported defendant's conviction for assault with a deadly weapon on an aiding and abetting theory when "the evidence showed defendant responded to a verbal slight against his girlfriend by bringing two carloads of gang members to confront [the victim] .... As the standoff intensified, defendant made no move either to defuse the situation or to leave. To the contrary, defendant approached [the victim], then followed him after he was stabbed. The evidence was sufficient to show defendant had knowledge of the criminal purpose of the individual who actually stabbed [the victim], and acted with the intent or purpose to commit assault with a deadly weapon or to encourage or facilitate that crime.").

### 2. Felon In Possession Of A Firearm (P.C. § 12021(a) (1)):[25]

A violation of P.C. § 12021(a)(1) requires proof of a "conviction of a felony

---

**23.** Crump testified Ransom told her that the gun petitioner used was Ransom's, and petitioner took it without permission. RT 1286:22–1287:16.

**24.** Mack initially testified Eric Thomas was the individual who had the gun, RT 340:4–347:24, but later claimed she made a mistake and it was petitioner who had the gun. RT 455:2–458:7.

**25.** The offense of being a felon in possession of a firearm provides:

Any person who has been convicted of a felony under the laws of the United States, of the State of California, or any other state, government, or country, or of an offense enumerated in subdivision (a), (b), or (d) of Section 12001.6, or who is addicted to the use of any narcotic drug, who owns or has in his or her possession or under his or her custody or control any firearm is guilty of a felony.

P.C. § 12021(a)(1)(2000).

and ownership, possession, custody or control of a firearm. Knowledge is also an element of the offense." *People v. Jeffers,* 41 Cal.App.4th 917, 922, 49 Cal.Rptr.2d 86 (1996) (citations omitted). Here, petitioner admitted he had previously been convicted of a felony, RT 22:6–23:27, and Vincent Thomas, Crump, and Mack all testified petitioner possessed a gun during the attack on Vincent. RT 108:26–110:8, 455:7–458:7, 865:3–866:17, 867:22–869:17, 1033:23–1035:23, 1038:22–1040:3, 1286:22–1287:13. This is more than sufficient evidence to support petitioner's conviction of being a felon in possession of a firearm. *People v. Williams,* 170 Cal.App.4th 587, 624–25, 88 Cal.Rptr.3d 401 (2009).

Since there is no merit to petitioner's claims of insufficient evidence, the California Supreme Court's denial of Grounds Four (a) and Ten is neither contrary to, nor an unreasonable application of, federal law.

## X

■ In Ground Four (b), petitioner claims the trial court "erred" in admitting extensive evidence of his gang membership, which violated his due process right to a fair trial. However, since evidence of petitioner's gang membership was clearly relevant to the gang enhancement charge against petitioner, as well as petitioner's motive in committing the crime, petitioner was not denied due process of law when evidence regarding his gang membership was admitted into evidence. *Windham v. Merkle,* 163 F.3d 1092, 1104 (9th Cir.1998); *see also People v. Hernandez,* 33 Cal.4th 1040, 1049, 16 Cal.Rptr.3d 880, 887, 94 P.3d 1080 (2009) ("[E]vidence of gang membership is often relevant to, and admissible regarding, the charged offense. Evidence of the defendant's gang affiliation—including evidence of the gang's territory, membership, signs, symbols, beliefs and practices, criminal enterprises, rivalries, and the like—can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime."); *People v. Funes,* 23 Cal.App.4th 1506, 1518, 28 Cal.Rptr.2d 758 (1994) ("Cases have repeatedly held that it is proper to introduce evidence of gang affiliation and activity where such evidence is relevant to an issue of motive or intent. Here, the evidence of gang membership and activity was clearly relevant to defendant's motive for attacking Sanchez and his intent in doing so." (citations omitted)); *Lopez v. Clark,* 2009 WL 3417784, *7 (C.D.Cal.) ("Evidence of Petitioner's gang membership was highly relevant at trial because Petitioner was charged with active participation in a criminal street gang ...., as well as with a criminal street gang enhancement on the underlying first degree murder charge.... It is difficult to conceive how the prosecution would have been able to prove the charge of active participation in a street gang and the gang enhancement without introducing evidence of Petitioner's membership in the Pacoima Flats criminal street gang.").

Thus, there is no merit to Ground Four (b), and the California Supreme Court's denial of this claim is neither contrary to, nor an unreasonable application of, federal law.

## XI

■ Prosecutorial misconduct rises to the level of a constitutional violation only where it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (*quoting Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974)); *Comer v. Schriro,* 480 F.3d 960, 988 (9th Cir.), *cert. denied,* 550 U.S. 966, 127 S.Ct. 2455, 167 L.Ed.2d 1147 (2007);

*Drayden v. White*, 232 F.3d 704, 713 (9th Cir.2000), *cert. denied*, 532 U.S. 984, 121 S.Ct. 1630, 149 L.Ed.2d 491 (2001).

The petitioner claims in Ground Five that the prosecutor either misled or coerced witness LaJoyce Mack into recanting her prior testimony and testifying instead that she saw petitioner, who was known as "Crazy D," with a gun. There is no merit to this claim.

Mack initially testified Eric Thomas was the person who had the gun at Adrienne Mitchell Park. RT 340:4–347:24. However, she later realized she had made a mistake, and changed her testimony, as follows:

[DA]: Do you recall yesterday, after testifying and leaving this courtroom, going back to the district attorney's office with Melissa Hernandez, a woman from my office who has been giving you a ride to court everyday?

A: Yes.

[DA]: After you went back to the office, did you come out of the office and approach me on the street corner with me talking to some judge with a beard?

A: Yes.

[DA]: Do you recall what you said to me?

A: Yes.

[DA]: What did you say to me?

A: I asked you the name of—I asked you who was the name of Crazy D.

[DA]: You asked me who Crazy D was?

A: Yes.

[DA]: What did I tell you?

A: He was the gentlemen [sic] sitting in court.

[DA]: Why did you ask me that question?

A: Because it dawned on me, . . . that I didn't know what Eric Thomas' nickname was. And as far as I knew, his name was Crazy D. That's all I know.

[DA]: What are you saying?

A: **I pretty much made a mistake.**

[DA]: In what respect?

A: As far as what I said Eric Thomas had the gun.

[DA]: So you're saying Eric Thomas didn't have the gun?

A: No. As far as I knew, his name was Crazy D. As far as I knew, he was the one who had the gun.

RT 455:2–456:3 (emphasis added). The prosecutor then had Eric Thomas enter the courtroom, RT 460:4–28, and Mack clearly stated Eric Thomas was **not** the person she had previously identified to the police as having the gun. RT 461:15–25. Instead, she picked out petitioner from a photographic lineup as the person with the gun. RT 461:20–22.

"The fact that a witness may have made an earlier inconsistent statement . . . does not establish that the testimony offered at trial was false." *United States v. Croft*, 124 F.3d 1109, 1119 (9th Cir.1997); *see also Allen*, 395 F.3d at 995 (9th Cir.) (inconsistencies in testimony do not establish witness' untruthfulness or that prosecutor had any basis to believe testimony was false). Here, petitioner has presented absolutely no evidence demonstrating the prosecutor presented false testimony to the jury or that he induced Mack to change her testimony. Therefore, there is no merit to this prosecutorial misconduct claim. *Allen*, 395 F.3d at 995; *Croft*, 124 F.3d at 1119; *see also United States v. Geston*, 299 F.3d 1130, 1135 (9th Cir.2002) ("At most, two conflicting versions of the incident were presented to the jury. It was within the province of the jury to resolve the disputed testimony."); *United States v. Baker*, 850 F.2d 1365, 1371–72 (9th Cir.1988) ("[T]he record here at most shows only a prior inconsistent statement by Hanson. . . . We cannot presume the prosecutor knew that the prior statement was true, but used it anyway. Given [the

defendant's] failure to produce any evidence of knowing use of perjured testimony, we must reject his argument.").

Since Ground Five is without merit, the California Supreme Court's denial of this claim is neither contrary to, nor an unreasonable application of, federal law.

## XII

 A faulty jury instruction will constitute a violation of due process only where the instruction by itself so infected the entire trial that the resulting conviction violates due process. *Middleton v. McNeil,* 541 U.S. 433, 437, 124 S.Ct. 1830, 1832, 158 L.Ed.2d 701 (2004); *McGuire,* 502 U.S. at 71–72, 112 S.Ct. at 482. The instruction must be more than merely erroneous; rather, petitioner must show there was a "'reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution.'" *McNeil,* 541 U.S. at 437, 124 S.Ct. at 1832 (citations omitted); *Boyde v. California,* 494 U.S. 370, 380, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990); *see also Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973) ("Before a federal court may overturn a conviction resulting from a state trial in which [an allegedly faulty] instruction was used, it must be established not merely that the instruction is undesirable, erroneous or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment."). Further, "[i]t is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *McGuire,* 502 U.S. at 72, 112 S.Ct. at 482 (citation omitted); *Naughten,* 414 U.S. at 147, 94 S.Ct. at 400.

In Ground Eight, petitioner claims the court misled the jury during deliberations by the manner in which it answered a question from the jury. This claim is without merit.

The facts underlying this claim are, as follows: On January 30, 2002, the jury sent a note to the court during deliberations, asking:

> Did Mollika [sic] Jernigan, during her testimony, ever identify the Defendent [sic] or Ratliff as the one hanging out the car window with the gun[?]

CT 309. The prosecutor wanted the witness's testimony read back to the jury, RT 1600:9–13, but after reviewing the transcript and discussing the matter with defense counsel, the court[26] called the jury into the courtroom, RT 1601:2–1603:11, and stated:

> [T]he answer I am going to give you is that the witness, Mollieka Jernigan, when she was testifying during the course of the trial, never identified the individual who was hanging out the car window with the gun, whether it be by using the term the "defendant" or "Ratliff," or anything else for that matter.

RT 1602:17–22. The court further stated:

> I am saying the court reporter has gone back through her notes during the course of Miss Jernigan's testimony during the trial, and that at no point did she specifically identify in her testimony who the person was hanging out the car window with the gun. [¶] All right. Now that doesn't mean—You're supposed to look at the evidence in its entirety and not look at one witness' testimony in a vacuum, all right? All of the evidence is to be viewed in conjunction with the rest of it. So, with respect to Miss Jernigan's testimony, or with any witness'

---

**26.** The trial judge was unavailable when this issue arose, so another Superior Court judge addressed the matter. RT 1595:5–11.

testimony, that testimony should be viewed in conjunction with all the other evidence, all the other witnesses' testimony. [¶] You can't just look at a portion of one person's testimony or simply one person's testimony. You have to evaluate it all in the big picture, in the whole context of the case, and see how it fits in and if it relates or it doesn't, see if it supports an issue or it doesn't, or contradicts it. Those are all the things that you have to work through. You as jurors are independent judges of the facts. And once you determine what the facts are, or what the evidence is, then you apply the law that the judge instructed you on. And by doing that, hopefully, arrive at a verdict, okay?

RT 1604:19–1605:14. Defense counsel objected to this statement, and requested the court reread CALJIC no. 2.27[27] to the jury; however, the court overruled the objection, noting the jury had all the jury instructions, including CALJIC no. 2.27. RT 1606:15–1608:4.

Petitioner's motion for a new trial was based on the foregoing. CT 303–26; RT 1658:11–1661:12. However, the trial court denied the motion, stating:

Now let me address [the substitute judge's] comments. I would characterize them as unfortunate. And [at] the risk of sounding like I am second-guessing a colleague, had I been in town that day, I would not have—In fact, I would have simply directed the court reporter to go into the deliberation room and read the entire testimony of Miss Jernigan. But that was not done here, so I'm left with the statements made to the jury by [ the Judge]. [ ¶] And I have to agree with [the prosecutor] that while it

sounds like he's telling them to disregard CALJIC 2.27, that he isn't really. [¶] CALJIC 2.27 was given to the jury by me, and I will quote that instruction in full. [¶] "You should give the testimony of a single witness whatever weight you think it deserves. Testimony by one witness, which you believe, concerning any fact is sufficient for the proof of that fact." [¶] And I emphasize the last sentence, "You should carefully review all the evidence upon which the proof of that fact depends." [¶] CALJIC 2.90, the Reasonable Doubt instruction. The second paragraph and the definition of reasonable doubt: [¶] "Reasonable doubt is defined as follows: It is not a mere possible doubt because everything relating to human affairs is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition which they cannot say they feel an abiding conviction of the truth of the charge." [¶] And perhaps in an awkward phrasing, that is, in essence, what [the substitute judge] is telling the jury in the [response]. [¶] Finally, in CALJIC 1.01 telling or directing the jury how to approach the instructions. And that instruction reads, in pertinent part, "Do not single out any particular sentence or any individual point or instruction and ignore the others. Consider the instructions as a whole and each in light of all the others." [¶] So, we have instructions that were given to the jury. Not only were they given orally, but they had copies of these instructions to refer to in the deliberation

---

27. CALJIC no. 2.27 provides:
 You should give the [uncorroborated] testimony of a single witness whatever weight you think it deserves. Testimony by one witness, which you believe, concerning any fact [whose testimony about that fact does

not require corroboration] is sufficient for the proof of that fact. You should carefully review all the evidence upon which the proof of that fact depends.
CT 202.

room. [¶] We have instructions that they are to consider all the evidence. We have instructions that they are to consider all the instructions. And I cannot conclude that [the substitute judge's] comments, however inartfully phrased, tell the jury to do anything other than that. [¶] And so, for those reasons, I cannot conclude that a miscarriage of justice was occasioned by those comments by [ the substitute judge]. [¶] The motion for new trial, based on his dialogue to the jury, is denied.

RT 1678:6–1680:2.

As the trial court found, the court did not misstate California law, which requires the jury to "consider all the evidence on which the proof of any fact depends." CT 202 (CALJIC no. 2.27); *see also* CT 210 (CALJIC no. 2.90, which defines reasonable doubt as "that state of the case which, *after the entire comparison and consideration of all the evidence,* leaves the minds of the jurors in that condition which they cannot say they feel an abiding conviction of the truth of the charge." (emphasis added)). Moreover, the trial court instructed the jury to consider the jury instructions "as a whole and each in light of the others" without "singl[ing] out any particular sentence or any individual point or instruction[,]" CT 184 (CALJIC no. 1.01), and "[the] jury is presumed to follow its instructions," *Weeks v. Angelone*, 528 U.S. 225, 234, 120 S.Ct. 727, 733, 145 L.Ed.2d 727 (2000); *Zafiro v. United States*, 506 U.S. 534, 540–41, 113 S.Ct. 933, 939, 122 L.Ed.2d 317 (1993); *Richardson v. Marsh*, 481 U.S. 200, 206, 107 S.Ct. 1702, 1707, 95 L.Ed.2d 176 (1987), and to attend to the particular language of an instruction. *United States v. Olano*, 507

U.S. 725, 740, 113 S.Ct. 1770, 1781, 123 L.Ed.2d 508 (1993); *Francis v. Franklin,* 471 U.S. 307, 324 n. 9, 105 S.Ct. 1965, 1976 n. 9, 85 L.Ed.2d 344 (1985). Petitioner has not shown this presumption is unwarranted here.

Thus, the California Supreme Court's denial of Ground Eight was neither contrary to, nor an unreasonable application of, clearly established federal law.

## XIII

 The prosecution's willful or inadvertent suppression of evidence favorable to the accused violates due process when the evidence is material to guilt or punishment, *Banks v. Dretke,* 540 U.S. 668, 691, 124 S.Ct. 1256, 1272, 157 L.Ed.2d 1166 (2004); *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963), whether the evidence is exculpatory or impeaching. *Strickler v. Greene,* 527 U.S. 263, 280, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Youngblood v. West Virginia,* 547 U.S. 867, 870, 126 S.Ct. 2188, 2190, 165 L.Ed.2d 269 (2006) (per curiam) (citations and internal quotation marks omitted); *Strickler,* 527 U.S. at 280, 119 S.Ct. at 1948. The petitioner has the "burden of showing that withheld evidence is material[,]" *United States v. Si,* 343 F.3d 1116, 1122 (9th Cir.2003); *United States v. Zuno–Arce,* 44 F.3d 1420, 1425 (9th Cir.), *cert. denied,* 516 U.S. 945, 116 S.Ct. 383, 133 L.Ed.2d 306 (1995), and this Court must assess whether the withheld evidence is material "in the context of the entire record."[28] *United States v. Agurs,* 427

---

**28.** There is no separate "harmless error" analysis for *Brady* violations since " 'a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different,' neces-

sarily entails the conclusion that the suppression must have had 'substantial and injurious effect or influence in determining the jury's verdict.' " *Kyles v. Whitley,* 514 U.S. 419, 435–36, 115 S.Ct. 1555, 1566–67, 131

U.S. 97, 112, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342 (1976); *United States v. Jernigan*, 492 F.3d 1050, 1054 (9th Cir.2007) (en banc).

The *Brady* rule applies when "the prosecution's case includes perjured testimony and ... the prosecution knew, or should have known, of the perjury." *Agurs*, 427 U.S. at 103, 96 S.Ct. at 2397. Thus, "a conviction obtained by the [prosecutor's] knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Agurs*, 427 U.S. at 103, 96 S.Ct. at 2397 (footnotes omitted); *Hayes v. Brown*, 399 F.3d 972, 978 (9th Cir.2005) (en banc); *see also Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972) ("[D]eliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'"); *Miller v. Pate*, 386 U.S. 1, 7, 87 S.Ct. 785, 788, 17 L.Ed.2d 690 (1967) ("[T]he Fourteenth Amendment cannot tolerate a state criminal conviction obtained by the knowing use of false evidence.").[29] "To prevail on a claim based on

[the prosecutor's knowing use of false testimony], the petitioner must show that (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) that the false testimony was material." *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir.2003); *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959).

In Ground Nine, petitioner claims the prosecutor "suppressed" or withheld exculpatory information about a potentially helpful witness named Rashema Ward. There is no merit to this claim.

The facts underlying this claim are set forth in the motion for a new trial petitioner filed after the jury verdict. CT 303–08, 352–60. Initially, the hearing on the motion was set for April 17, 2002; however, petitioner requested a continuance, and the hearing was continued to May 10, 2002. CT 347. On May 10, 2002, petitioner requested another continuance, and the hearing was continued to June 14, 2002. CT 351. On June 12, 2002, petitioner filed a legal memorandum, his defense attorney's declaration,[30] his investigator's declaration[31] and Ward's declaration.[32] CT 352–60.

---

L.Ed.2d 490 (1995) (citations and internal quotation marks omitted); *Singh v. Prunty*, 142 F.3d 1157, 1159 n. 5 (9th Cir.), *cert. denied*, 525 U.S. 956, 119 S.Ct. 388, 142 L.Ed.2d 321 (1998).

**29.** Furthermore, "[a] prosecutor ... has a constitutional duty to correct evidence he or she knows is false, even if it was not intentionally submitted." *Mancuso*, 292 F.3d at 957; *Hayes*, 399 F.3d at 978.

**30.** According to defense counsel, "[o]n or about the first week of May, 2002, [he] received information that a witness by the name of Rashima [sic] Ward, A.K.A. Tamara Hunt, was willing to talk with defense investigators about the events of May 15, 2000." CT 353:6–9. "Prior to trial, defense investigator Thomas Crompton made numerous attempts to contact Tamara Hunt[,] which was the name supplied to both defense counsel prior

to trial." CT 353:10–12. "During the course of trial, [the prosecutor] informed defense counsels [sic] ... that the name of Tamara Hunt was an alias for Rashima [sic] Ward. Prior to that notice defense counsels [sic] were lead to believe Tamara Hunt was her true and correct name." CT 353:14–18. "No mention was made nor were any reports supplied to either defense counsel referencing the Rashima [sic] Ward, A.K.A. Tamara Hunt, contact." CT 353:20–24.

**31.** Thomas R. Crompton, petitioner's investigator, averred he identified a witness named "Tamara Nicole Hunt" from a police report, and he began looking for her as early as March 15, 2001. CT 357. Over the next couple of months, on three separate dates, Crompton stated he went to the City of Moreno Valley to the address for Hunt listed on the police report, but eventually he was told she

On June 14, 2002, the trial court stated it would like to see Ward and hear her testimony, and continued the hearing on the motion for a new trial to July 19, 2002, so defense counsel could produce Ward. CT 364; RT 1655:23–25. However, Ward was not at the hearing on July 19, 2002, and, after hearing oral argument, RT 1661:13–1670:9, 1670:27–1677:5, the trial court found petitioner had not shown a *Brady* violation, stating:

> Well, I don't feel there's a *Brady* violation here. And the only way I could reach the conclusion that there was is if I believed what she [Ward] says in the declaration. And I have been attempting to avoid basing a theory or basing my ruling on the contents of that declaration, but at this point I don't see any way around it.
>
> \* \* \*
>
> Let me approach this from two different angles: One, let's assume everything in there [the Ward declaration] is true. Then I have to look at the overall picture, the big picture, so to speak. Assuming I would accept everything she says as true, does the substantial evidence produced at the trial justify the jury's verdict? In other words, put another way, would there likely be a verdict more favorable to the defendant? [¶] And I conclude that there would not be. [¶] There is substantial evidence to support the jury's verdict, even assuming that I were to accept Miss Ward's statements. But that's assuming I would accept them as being true. I don't. I find her statements to be unbelievable, and that's even without any cross-examination of her. Her conduct all along, in attempting to avoid process and not cooperating with either side, suggests to me that she is someone who is not to be believed or someone who at least is a question of character and credibility. [¶] So, the information contained in her declaration I find to be lacking in credibility, and certainly lacking in the kind of credibility that would be required for me to conclude there was justification for granting of a new trial.

did not live there. *Id.* He also attempted to conduct a computer data base search of public records for Tamara Hunt, but found no listings with her name or date of birth. *Id.* Similarly, he was unable to find any civil or criminal filings with her name. *Id.* After he learned from defense counsel that Tamara Hunt's true name was Rashema Ward, he located and contacted Ward on May 31 and June 3, 2002, and obtained her declaration. CT 358.

**32.** In her declaration, Ward stated:

> On May 25, 2000, I was present at Mel's Liquor, Victor Street and Adrian Mitchell Park. I was with Joyce Mack, Tracylin Crump and Ashawanta Lnu at all three places. At Mel' s[L]iquor I saw a black male with a club in his hand hit this other guy on the head and later when I spoke to the police and they showed me a photograph[,] ... I pointed out the guy that got hit in the head. I later learned it was [petitioner]. I also saw a fight at Victor Street between the people in a U–Haul truck and guys in a white pick-up. After that fight, I followed the cars to Adrian Mitchell park. When we got to the park, we stopped our car and I saw some of the same people in a fight. I did not see [petitioner], the guy who got hit in the head with the club, with a gun, but I did see him there. I did not see anyone, on that day, at the park with a gun.

CT 359:26–360:12. Ward further stated that she spoke with the prosecutor "probably in March of 2001." CT 359:13–15. After the incident, Ward "moved from [her] address in the police reports but [the prosecutor] found [her]...." CT 359:16–18. Finally, Ward stated she told the prosecutor she "did not want to testify and [she] didn't care what he did. The [prosecutor] sent people to [her] house 3 or 4 times, but [she] would not answer the door." CT 359:21–23. The prosecutor "knew where [she] lived and had [her] telephone number during this entire time." CT 359:24–25.

[¶] So, on that basis, motion for new trial is denied.

RT 1672:15–21, 1677:10–1678:4; CT 379.

Here, even if this Court were to overlook the Superior Court's negative credibility determination, petitioner has failed to demonstrate the prosecution withheld material evidence. Ward merely stated in her declaration that although she saw petitioner at the park while Vincent Thomas was being attacked, she "did not see [petitioner] ... with a gun...." CT 360:8–12; 359:12–14. On the other hand, several other witnesses testified at trial that they **did** see petitioner with a gun. *See, e.g.,* RT 108:26–110:8, 455:7–458:7, 865:3–866:17, 867:22–869:17, 1033:23–1035:23, 1038:22–1040:3, 1286:22–1287:13. Because "there is [no] reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different," the prosecutor's failure to inform defense counsel of Ward's real name before trial is not material. *Youngblood,* 547 U.S. at 870, 126 S.Ct. at 2190 (internal citation and quotations omitted); *Hovey v. Ayers,* 458 F.3d 892, 921 (9th Cir.2006).

Since Ground Nine is without merit, the California Supreme Court's denial of this claim is neither contrary to, nor an unreasonable application of, federal law.

### XIV

To succeed on a claim of an ineffective assistance of trial counsel, a habeas petitioner must demonstrate his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Rompilla v. Beard,* 545 U.S. 374, 380, 125 S.Ct. 2456, 2462, 162 L.Ed.2d 360 (2005); *Williams v. Taylor,* 529 U.S. 362, 390, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000); *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The petitioner bears the burden of establishing both compo-nents. *Williams,* 529 U.S. at 390–91, 120 S.Ct. at 1511–12; *Smith v. Robbins,* 528 U.S. 259, 285–86, 120 S.Ct. 746, 764, 145 L.Ed.2d 756 (2000). "Deficient performance is performance which is objectively unreasonable under prevailing professional norms." *Hughes v. Borg,* 898 F.2d 695, 702 (9th Cir.1990) (citing *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064). Prejudice "focuses on the question whether counsel's deficient performance renders the results of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell,* 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993); *Williams,* 529 U.S. at 393 n. 17, 120 S.Ct. at 1513 n. 17.

To establish deficient performance, the petitioner must show his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *Williams,* 529 U.S. at 391, 120 S.Ct. at 1511. In reviewing trial counsel's performance, the court will "strongly presume[ ] [that counsel] rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066; *Yarborough v. Gentry,* 540 U.S. 1, 8, 124 S.Ct. 1, 5, 157 L.Ed.2d 1 (2003); *Kimmelman v. Morrison,* 477 U.S. 365, 381, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986). Only if counsel's acts or omissions, examined within the context of all the surrounding circumstances, were outside the "wide range" of professionally competent assistance, will the petitioner meet this initial burden. *Morrison,* 477 U.S. at 386, 106 S.Ct. at 2588; *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2068.

■ If the petitioner makes this showing, he must then establish there is a "reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *Rompilla,* 545 U.S. at 390, 125 S.Ct. at 2467; *Williams,* 529 U.S. at 391, 120 S.Ct. at 1511–12. The errors must not merely undermine confidence in the outcome of the trial, but must result in a fundamentally unfair proceeding. *Williams,* 529 U.S. at 393 n. 17, 120 S.Ct. at 1513 n. 17; *Lockhart,* 506 U.S. at 369, 113 S.Ct. at 842–43. However, a court need not determine whether counsel's performance was deficient before examining the prejudice the alleged deficiencies caused the defendant. *See Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed."); *Smith,* 528 U.S. at 286 n. 14, 120 S.Ct. at 764 n. 14 (same).

### a. Properly Investigate and Put On Adequate Defense:

 Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066; *Turner v. Duncan,* 158 F.3d 449, 456 (9th Cir.1998). This includes a duty to investigate the prosecution's case and to follow up on any exculpatory evidence. *Morrison,* 477 U.S. at 385, 106 S.Ct. at 2588; *Riley v. Payne,* 352 F.3d 1313, 1318 (9th Cir.2003), *cert. denied,* 543 U.S. 917, 125 S.Ct. 39, 160 L.Ed.2d 200 (2004). Even so, " 'the duty to investigate and prepare a defense is not limitless: it does not necessarily require that every conceivable witness be interviewed....' " *Hendricks v. Calderon,* 70 F.3d 1032, 1040 (9th Cir.1995) (quoting *United States v. Tucker,* 716 F.2d 576, 584 (9th Cir.1983)), *cert. denied,* 517 U.S. 1111, 116 S.Ct. 1335, 134 L.Ed.2d 485 (1996); *Lord v. Wood,* 184 F.3d 1083, 1095 n. 8 (9th Cir.1999), *cert. denied,* 528 U.S. 1198, 120 S.Ct. 1262, 146 L.Ed.2d 118

(2000). An attorney's performance is deficient if evidence exists that might show a defendant's innocence or raise sufficient doubt to undermine confidence in a guilty verdict, and the attorney did not investigate the evidence. *Riley,* 352 F.3d at 1318; *Lord,* 184 F.3d at 1093. To show prejudice, the petitioner must demonstrate that further investigation would have revealed favorable evidence. *Ceja v. Stewart,* 97 F.3d 1246, 1255 (9th Cir.1996), *cert. denied,* 522 U.S. 971, 118 S.Ct. 422, 139 L.Ed.2d 324 (1997); *Hendricks,* 70 F.3d at 1042. Moreover, " 'ineffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case.' " *Bragg v. Galaza,* 242 F.3d 1082, 1088 (9th Cir.2001) (citation omitted), *as amended,* 253 F.3d 1150 (9th Cir.2001); *Eggleston v. United States,* 798 F.2d 374, 376 (9th Cir.1986).

In Ground Six (a) petitioner conclusorily claims defense counsel failed "to properly investigate and put on an adequate defense." However, to the extent this is meant to be a separate claim, rather than an overview of the claims petitioner raises herein, petitioner's "conclusory suggestion[ ] that his trial ... counsel provided ineffective assistance fall[s] far short of stating a valid claim of constitutional violation." *Jones v. Gomez,* 66 F.3d 199, 205 (9th Cir.1995), *cert. denied,* 517 U.S. 1143, 116 S.Ct. 1437, 134 L.Ed.2d 559 (1996); *Villafuerte v. Stewart,* 111 F.3d 616, 630–31 (9th Cir.1997), *cert. denied,* 522 U.S. 1079, 118 S.Ct. 860, 139 L.Ed.2d 759 (1998).

### b. Severance Motion:

 In Ground Six (b), petitioner claims defense counsel was ineffective in failing to file a motion to sever his case from codefendant Vanpool's case. The facts underlying this claim are, as follows: On December 18, 2000, the prosecutor filed

a motion to consolidate the trials of petitioner and Vanpool, Vanpool's Clerk's Transcript ("VCT") 165–71, and defense counsel opposed the motion. CT 89; VCT 175. However, the trial court granted the prosecutor's motion to consolidate the proceedings. *Ibid.*

California Penal Code § 1098 requires that "[w]hen two or more defendants are jointly charged with any public offense, whether felony or misdemeanor, they must be tried jointly, unless the court order separate trials." P.C. § 1098 (2000). Under this section, "a trial court *must* order a joint trial as the 'rule' and *may* order separate trials only as an 'exception.'" *People v. Alvarez*, 14 Cal.4th 155, 190, 58 Cal.Rptr.2d 385, 405, 926 P.2d 365 (1996) (emphasis in original), *cert. denied*, 522 U.S. 829, 118 S.Ct. 94, 139 L.Ed.2d 50 (1997); *People v. Cleveland*, 32 Cal.4th 704, 726, 11 Cal.Rptr.3d 236, 253, 86 P.3d 302 (2004), *cert. denied*, 543 U.S. 1058, 125 S.Ct. 867, 160 L.Ed.2d 784 (2005). "Defendants charged with common crimes involving common events and victims present a classic case for a joint trial." *People v. Tafoya*, 42 Cal.4th 147, 162, 64 Cal. Rptr.3d 163, 180, 164 P.3d 590 (2007) (citation and internal quotation marks omitted), *cert. denied*, 552 U.S. 1321, 128 S.Ct. 1895, 170 L.Ed.2d 764 (2008); *Cleveland*, 32 Cal.4th at 726, 11 Cal.Rptr.3d at 253, 86 P.3d 302.[33] Here, the charges against petitioner and co-defendant Vanpool presented the "classic case" for a joint trial, *Tafoya*, 42 Cal.4th at 162, 64 Cal.Rptr.3d at 180, 164 P.3d 590; *Cleveland*, 32 Cal.4th at 726, 11 Cal.Rptr.3d at 253, 86 P.3d 302, and petitioner has not shown there was any basis for ordering separate trials. Thus, defense counsel was not ineffective

for not making a futile motion to sever petitioner's and Vanpool's cases. *See Rupe v. Wood*, 93 F.3d 1434, 1444–45 (9th Cir.1996) ("[T]he failure to take a futile action can never be deficient performance."), *cert. denied*, 519 U.S. 1142, 117 S.Ct. 1017, 136 L.Ed.2d 894 (1997); *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir.) (counsel is not obligated to raise frivolous motions, and failure to do so cannot constitute ineffective assistance of counsel), *cert. denied*, 513 U.S. 1001, 115 S.Ct. 513, 130 L.Ed.2d 420 (1994).

### c. Witnesses:

■ In Ground Six (c), petitioner claims defense counsel was ineffective in failing "to subpoena any eyewitnesses, or character witnesses who favored petitioner." The petitioner identifies these witnesses as: (1) Gary Bryant, who "would have not only impeached … Eric Thomas, but could have spoke [sic] to petitioner's character [and] where petitioner is in life"; (2) Darryl Bellfield, who would have impeached Eric Thomas and "testified to the fact that petitioner had changed his lifestyle when his kids [were] born and was no longer a part of [a] gang nor any type of clicks [sic]"; (3) Chris Rogers, who "would have testified to the fact that after being jumped and beaten with a steering column lock at Mel[']s Liquor[,] petitioner came to [Roger's] house[,] where his girlfriend gave petitioner some ice for [petitioner's] split lip and cleaned petitioner[']s head wound and while [petitioner was] getting his wounds cleaned prosecution witnesses LaJoyce Mack and Tracilyn Crump came to the house asking many questions then left only to return [approximately] 5 to 10

---

**33.** "Nonetheless, a trial court, in its discretion, may order separate trials in the face of an incriminating confession, prejudicial association with codefendants, likely confusion resulting from evidence on multiple counts, conflicting defenses, or the possibility that at a separate trial a codefendant would give exonerating testimony." *Tafoya*, 42 Cal.4th at 162, 64 Cal.Rptr.3d at 180, 164 P.3d 590 (citation, internal quotation marks, and emphasis omitted); *Cleveland*, 32 Cal.4th at 726, 11 Cal.Rptr.3d at 253, 86 P.3d 302.

[minutes] later with victim Vincent Thomas and numerous friends of Mr. Thomas where another fight broke out and Chris Rogers [had] his leg broken by victim Vincent Thomas with the steering column lock [and Rogers's] mother called the police in regards to the assault, however[,] police failed to make a report"; (4) Celeste Williams, who "would testify to the fact that she made [a] 911 call to [the] police indicating that victim Vincent Thomas and friends came to her house and again assaulted petitioner and her son Chris Rogers[,] breaking his leg with a metal steering column lock"; and (5) Paulette P., who "would testify to the fact that she and prosecution witness Ranika Ransom had been with petitioner all day and not only was petitioner not near victim Vincent Thomas when he was beaten, but also that petitioner never possessed [the] allege[d] gun nor any other type of weapon." Reply at 34–35.

Although petitioner has identified the witnesses he claims his defense counsel should have called, he has not provided any competent evidence from these witnesses, as he must, showing what these "potential" witnesses would have testified to at his trial, *Dows v. Wood,* 211 F.3d 480, 486 (9th Cir.), *cert. denied,* 531 U.S. 908, 121 S.Ct. 254, 148 L.Ed.2d 183 (2000), and that these witnesses were actually available and willing to testify. *United States v. Harden,* 846 F.2d 1229, 1231–32 (9th Cir.), *cert. denied,* 488 U.S. 910, 109 S.Ct. 264, 102 L.Ed.2d 252 (1988); *White v. Ollison,* 592 F.Supp.2d 1227, 1250 (C.D.Cal. 2008). Therefore, this claim is without merit. *See Sandgathe v. Maass,* 314 F.3d 371, 379 (9th Cir.2002) (affirming denial of ineffective assistance of counsel claim when petitioner presented no evidence supporting claim); *Thomas v. McGrath,* 329 Fed.Appx. 85, 86 (9th Cir.) (petitioner did not demonstrate he received ineffective assistance of counsel when petitioner's "offer of proof, unsupported by any affidavits,

provides insufficient evidence as to each witness's potential testimony[,]" and petitioner "never stated whether [one witness] would have been available and willing to testify"), *cert. denied,* —— U.S. ——, 130 S.Ct. 505, 175 L.Ed.2d 359 (2009).

**d. Expert Witness:**

 In Ground Six (d), petitioner claims defense counsel was ineffective in failing to interview and subpoena an expert witness on gang activity. However, petitioner has presented absolutely no evidence setting forth what an expert would have said at trial and how such testimony would have benefitted him; thus, there is no merit to this claim. *See Wildman v. Johnson,* 261 F.3d 832, 839 (9th Cir.2001) (Petitioner did not show defense counsel was ineffective in failing to call expert when petitioner "offered no evidence that an arson expert would have testified on his behalf at trial. He merely speculates that such an expert could be found. Such speculation, however, is insufficient to establish prejudice."); *Grisby v. Blodgett,* 130 F.3d 365, 373 (9th Cir.1997) ("Speculation about what an expert could have said is not enough to establish prejudice.").

**e. Exculpatory Evidence:**

 In Ground Six (e), petitioner claims defense counsel was deficient for failing to present the following exculpatory evidence: (i) "letters and notes ... Eric Thomas wrote petitioner," (ii) an "L.A. Times news paper [sic] clipping of petitioner involved in Straight Talk Program speaking out against gangs to jr high and high school kids," and (iii) "[a] surveillance video tape [sic] of footage depicting petitioner with a very low hair cut without a beard, whereas the prosecution witnesses described the individual with [the] allege[d] gun as having either corn rolls, puff ball or an afro in his hair with a beard." However, petitioner has provided

no factual support for this claim since he has not presented any of the evidence he claims exists or any declarations by persons with knowledge of this purported evidence. *Sandgathe,* 314 F.3d at 379; *Dows,* 211 F.3d at 487.

### f. & g. LaJoyce Mack's Testimony/Motion for Mistrial and "Parading" Eric Thomas into the Courtroom:

In Ground Six (f), petitioner claims defense counsel was ineffective for failing to object when Mack corrected her testimony and he did not move for a mistrial at that time. In Ground Six (g), petitioner claims defense counsel was ineffective in failing to object when the prosecutor brought Eric Thomas into the courtroom while Mack was testifying so Mack could observe Eric.

The facts underlying these claims are set forth above. Although this Court has found petitioner's prosecutorial misconduct claim to be without merit, petitioner again conclusorily claims the prosecutor coerced Mack to change her testimony and brought Thomas into court to intimidate Mack. Moreover, petitioner has not shown any basis for defense counsel to object to Mack's changed testimony or to request a mistrial due to Mack changing her testimony or Thomas's appearance in court during Mack's testimony, and petitioner's "conclusory suggestions that his trial and state appellate counsel provided ineffective assistance fall far short of stating a valid claim of constitutional violation." *Jones,* 66 F.3d at 205; *Villafuerte,* 111 F.3d at 630–31.

### h. & i. Eric Thomas's Testimony and Cross–Examination of Eric Thomas:

In Ground Six (h), petitioner claims defense counsel was ineffective in failing to object to "incompetent prejudicial hearsay testimony" from Eric Thomas regarding whether petitioner was a part of the "Five R's." In Ground Six (i), petitioner claims defense counsel was ineffective in failing to properly cross-examine Eric Thomas about the basis for his "Five R's" testimony. *See also* Reply at 39–40.

During the trial, the prosecutor asked Eric whether there were "any specialized groups within the Raymond Crips that have certain functions" or, as he put it, "[a]ny clicks [sic]?" RT 534:13–16. In response, Eric Thomas stated "there's clicks [sic] within Raymond[,]" and identified one such clique as the "Five R's," which was "just a group of older homies." RT 534:17–28. The prosecutor then asked whether the Five R's was an "enforcement arm," and whether the Raymond Street Crips had a "killing click [sic]" and Eric ultimately responded that "We don't have anything like that from Raymond[,]" but "the closest you would get is the Five R's." RT 535:5–536:11. Petitioner was identified as a member of the Five R's. RT 535:10–11.

Here, petitioner identifies hearsay as the ground for objecting to this testimony by Eric. But the statements are not hearsay, *see* Cal. Evid.Code § 1200(a) (" 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated."), and defense counsel could not have objected on that ground. *See Matylinsky,* 577 F.3d at 1094 (Trial counsel's "failure to object to ... testimony as hearsay was not in error. ... Had [counsel] made a hearsay objection, it would have been properly overruled."). Even assuming *arguendo* the testimony was objectionable, petitioner has not shown he was prejudiced by the testimony,[34] since the jury

---

**34.** The record shows defense counsel extensively cross-examined Eric Thomas about this testimony. *See* RT 599–621, 637–644, 723–41.

acquitted petitioner of the attempted murder charge. CT 159; *Smith*, 528 U.S. at 286 n. 14, 120 S.Ct. at 764 n. 14; *Delgadillo v. Woodford*, 527 F.3d 919, 930 (9th Cir.2008).

#### j. Subpoena Ward:

■ In Ground Six (j), petitioner claims defense counsel was ineffective in failing to subpoena Ward to appear at the hearing on his motion for a new trial when he had the opportunity to do so during his investigator's meetings with her on May 31 and June 3, 2002. Reply at 40; *see* CT 358. As discussed above, defense counsel made numerous attempts to subpoena Ward to testify at the motion for a new trial, but was unable to find her. RT 1655:26–1656:23. Yet, even assuming arguendo defense counsel was deficient in failing to subpoena Ward when he had the opportunity,[35] petitioner has not shown he suffered any prejudice from Ward's failure to appear at the hearing. To the contrary, the trial court fully considered Ward's declaration before denying petitioner's motion for a new trial, CT 379; RT 1672:15–21, 1677:10–1678:4, and petitioner has not shown any additional evidence Ward would have provided if she had appeared at the hearing on the motion for a new trial. *Smith*, 528 U.S. at 286 n. 14, 120 S.Ct. at 764 n. 14; *Delgadillo*, 527 F.3d at 930.

#### k. Bifurcation:

■ In Ground Six (k), petitioner claims defense counsel was ineffective because he "misled" petitioner and left petitioner "confused as to the purpose of a[ ] bifurcation hearing ... which ultimately led to petitioner admitting to priors instead of having a trial on the priors." There is no factual basis for this claim because petitioner did not admit the prior convictions, but had a trial on them. CT 301–02; RT 1635:6–1652:4. Nevertheless, it appears what petitioner is really complaining about is defense counsel's decision that petitioner should admit (outside the presence of the jury) that he had a prior felony conviction for purposes of the felon in possession of a firearm charge. RT 22:10–23:22.

During the trial court's colloquy with petitioner, the trial court clearly explained petitioner's options to him, stating:

> THE COURT: All right. Mr. Ratliff, you're charged here in Court IV with ex-felon in possession of a firearm. When you heard me read the charge, I didn't tell the prospective jurors what your prior conviction was for, only that you had been previously convicted of a felony. [¶] Your attorney has made a request, and I have granted that request, that we bifurcate or separate that trial on all your priors. And you have two strike priors alleged here. One of which is the offense set forth in Court IV.[¶] Now, the district attorney has the burden of proving the truth of all of these allegations. He has the burden of proving it beyond a reasonable doubt. Your attorney in requesting that we separate the trial on your priors ...

---

**35.** Trial counsel explained:

> [T]here was no reason [Ward was not subpoenaed when she completed her declaration].... Certainly, I could have subpoenaed her on the second visit when we actually had her sign the affidavit under penalty of perjury.... Now, certainly, had I known [Ward] was going to be avoiding[,] at[ ] least apparently avoiding, us for the next three weeks or so, whatever

the period was, we would have subpoenaed her back then. I didn't know she was a noncooperative witness, too, given the fact she had volunteered the information and met with our investigator. Certainly, in looking back on it[,] I wish to heck we would have ... served a subpoena on her.

RT 1664:10–1666:14.

has done so because he thinks, and correctly so, that it would be prejudicial to your case if the jury heard about the nature and extent of your prior convictions. [¶] That puts you kind of between the proverbial rock and a hard place. The district attorney is required to prove that you were convicted of a felony. And one that you were convicted of was the robbery that you were allegedly convicted of in L.A. County in '91. Obviously, if that comes before the jury, what the D.A. would have to do to meet his burden of proof, then, the jury would hear about your prior conviction. [¶] Now, typically what happens is defendants charged with this type of offense will admit they were convicted of a prior felony. Waiving that particular element, if they do so, the nature of the case, this being felony, the robbery is not before the jury in the case in chief. I'll ask you to take a minute with your attorney, Mr. Morreale, and perhaps he can explain that a little clearer. [¶] Your options are as follows: You can demand that the D.A. prove each and every element of that charge, in which case he would bring evidence of your prior robbery conviction to the jury; or, you can admit to the Court that you were in fact convicted of a prior felony in 1991.[¶] And by doing that, all the jury would know is that that part of the element, or that element of the offense they are not to be concerned with, only whether or not you were in possession of a firearm. They would not hear of your robbery conviction in your case in chief. [¶] So if you would take a minute to speak to Mr. Morreale, he can explain your options a little better.

[DEFENSE]: Your Honor, we're ready on that.

THE COURT: How do you want to proceed?

[DEFENSE]: He's going to admit the prior felony conviction.

THE COURT: Mr. Ratliff, in Count IV you're charged with a violation of Penal Code Section 12021 Subdivision (a) Subsection (1), a felony. And it is alleged that on or about May 25th of year 2000, in the County of Riverside, State of California, you did willfully and unlawfully possess a handgun after having been previously convicted of a crime of robbery, in violation of Penal Code Section 211, on or about August 16, 1991, in Los Angeles County Superior Court. [¶] Now, as I explained to you just a moment ago, you have a right to compel the district attorney to prove each and every element of that offense. One of the elements being you were convicted of the crime of robbery in 1991. By admitting that part of the charge, that is, that you were convicted of that crime in 1991 in Los Angeles Superior Court, that will not come before the jury. The only thing the jury will be asked to decide is whether or not you possessed a firearm. [¶] Do you understand that, sir?

[PETITIONER]: Yes.

THE COURT: Do you understand by admitting that particular element of the defense you will be giving up you right to a jury trial on that particular issue, as well as the right to see, hear or question any witnesses who would testify with respect to that particular element. [¶] You'd also be giving up the right to call witnesses on your own behalf as to that particular element. [¶] Do you understand that, sir?

[PETITIONER]: Yes.

THE COURT: And with those rights and consequences in mind, do you

waive or give up your right to have a jury trial on that particular element so you can admit the prior conviction in 1991?

[PETITIONER]: Yes.

THE COURT: And do you admit that on August 19(sic), 1991, in Los Angeles Superior Court, you were convicted of a felony violation of Section 211 of the Penal Code?

[PETITIONER]: Yes.

THE COURT: The Court accepts that admission. I find it's freely and voluntarily entered.

RT 20:18–23:22. Here, petitioner's "[s]olemn declarations in open court[, which] carry a strong presumption of verity[,]" and constitute a "formidable barrier" to collateral attack, *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977), demonstrate petitioner's claim of confusion is specious. In any event, petitioner has not shown defense counsel's sound tactical decision was ineffective performance. *See Strickland*, 466 U.S. at 690–91, 104 S.Ct. at 2066 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."); *Raley v. Ylst*, 470 F.3d 792, 799 (9th Cir.2006) ("A disagreement with counsel's tactical decision does not provide the basis for declaring that the representation was constitutionally deficient."), *cert. denied*, 552 U.S. 833, 128 S.Ct. 59, 169 L.Ed.2d 50 (2007). Nor can petitioner demonstrate he was in any manner prejudiced by this decision, since the prosecutor clearly could prove he was a felon. *Smith*, 528 U.S. at 286 n. 14, 120 S.Ct. at 764 n. 14; *Delgadillo*, 527 F.3d at 930.

Thus, the California Supreme Court's denial of petitioner's claims of ineffective assistance of counsel was neither contrary to, nor an unreasonable application of, federal law.

## XV

The standards for determining whether trial counsel was ineffective also apply to determining whether appellate counsel was ineffective, *Smith*, 528 U.S. at 285, 120 S.Ct. at 764; *Cockett*, 333 F.3d at 944, and petitioner bears the burden of establishing both components of the *Strickland* standard, i.e., "that counsel's advice fell below an objective standard of reasonableness, ... and that there is a reasonable probability that, but for counsel's unprofessional errors, [the petitioner] would have prevailed on appeal." *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989); *Cockett*, 333 F.3d at 944. Appellate counsel has no constitutional duty to raise every issue, where, in the attorney's judgment, the issue has little or no likelihood of success. *Jones v. Barnes*, 463 U.S. 745, 751–53, 103 S.Ct. 3308, 3312–13, 77 L.Ed.2d 987 (1983) (limited on other grounds in *Smith*, 528 U.S. at 287, 120 S.Ct. at 765); *Turner*, 281 F.3d at 872. Indeed, as an officer of the court, appellate counsel is under an ethical obligation to refrain from wasting the court's time on meritless arguments. *McCoy v. Wisconsin*, 486 U.S. 429, 436, 108 S.Ct. 1895, 1900, 100 L.Ed.2d 440 (1988). Thus, in reviewing appellate counsel's performance, this court will presume appellate counsel used reasonable tactics; otherwise, it "could dampen the ardor and impair [counsel's] independence ..., discourage the acceptance of assigned cases, and undermine the trust between attorney and client." *Pollard v. White*, 119 F.3d 1430, 1435 (9th Cir.1997) (citing *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2065).

In Ground Seven, petitioner claims appellate counsel was ineffective for: (a)

"fail[ing] to raise numerous claims of … ineffective assistance of trial counsel"; (b) failing to claim insufficiency of evidence; (c) failing to "claim that the court misled the jurors with instructions"; (d) failing to claim "a violation of the Rules of Court standard on expert witnesses['] qualification to testify"; and (e) failing to claim "the prosecutor withheld exculpatory evidence[.]" Since the Court has determined subclaims (a), (b), (c) and (e) are without merit, appellate counsel was under no duty to raise those claims. *Robbins,* 528 U.S. at 285–86, 120 S.Ct. at 764; *Butcher v. Marquez,* 758 F.2d 373, 378 (9th Cir.1985); *see also Greer v. Mitchell,* 264 F.3d 663, 676 (6th Cir.2001) ("[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit[.]"), *cert. denied,* 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002). Similarly, petitioner's conclusory assertion in subclaim (d) cannot support a viable claim of ineffective assistance of appellate counsel. *Villafuerte,* 111 F.3d at 630–31; *Jones,* 66 F.3d at 205.

Thus, the California Supreme Court's denial of petitioner's claims of ineffective assistance of appellate counsel is neither contrary to, nor an unreasonable application of, federal law.

## RECOMMENDATION

IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) adopting the Report and Recommendation as the findings of fact and conclusions of law herein; and (3) directing that Judgment be entered denying the petition and dismissing the action with prejudice.

DATE: December 18, 2009